NO. 16-10556

# In the United States Court of Appeals for the Fifth Circuit

JEFFREY BARON, QUANTEC, LLC, AND NOVOPOINT, LLC,

*PLAINTIFFS-APPELLANTS*

V.

PETER S. VOGEL AND GARDERE WYNNE SEWELL LLP,

*DEFENDANTS-APPELLEES*

## BRIEF OF APPELLEES
## PETER S. VOGEL AND GARDERE WYNNE SEWELL LLP

From the Northern District of Texas, Dallas Division
No. 3:15-CV-232-L, Hon. Sam A. Lindsay, presiding

George M. Kryder
Jordan W. Leu
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Tel:  214.220.7719
Fax:  214.999.7719

*Attorneys for Peter S. Vogel and Gardere Wynne Sewell LLP*

# CERTIFICATE OF INTERESTED PERSONS

Case No.:        16-10556

Case Style:      *Jeffrey Baron, Quantec, LLC, and NovoPoint, LLC, Plaintiffs-Appellants v. Peter S. Vogel and Gardere Wynne Sewell LLP, Defendants-Appellees*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

## I.    **Appellants:**

Jeffrey Baron,
NovoPoint, LLC
Quantec, LLC

Trial and Appellate Counsel

Leonard H. Simon
PENDERGRAFT & SIMON, LLP

## II.    **Appellees:**

Peter S. Vogel
Gardere Wynne Sewell LLP

Trial and Appellate Counsel
George M. Kryder
Jordan W. Leu
VINSON & ELKINS LLP

/s/ George M. Kryder
George M. Kryder
*Attorney for Peter S. Vogel and Gardere Wynne Sewell LLP*

i

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not believe that oral argument is needed. This appeal is the latest attempt by a vexatious litigant to relitigate what this Court has called "a nightmare. What should have been a simple contract dispute . . . [has] morphed into a [six]-year train wreck involving numerous attorneys, millions of dollars in legal fees, thousands of docket entries, and massive frustrations for all parties, for [the district court], for the [b]ankruptcy [c]ourt, and for the Fifth Circuit." *See Netsphere, Inc. v. Gardere Wynne Sewell LLP*, No. 15-10341, 2016 WL 3667573, at *1 (5th Cir. July 8, 2016).

The issues Appellants raise already have been considered and rejected by the district court and other panels of this Court or waived by Appellants' failure to brief them, and the record amply demonstrates that the district court properly dismissed the latest amended complaint for multiple reasons under well-established law. In addition to the fatal defects in the issues Appellants do present, Appellants failed to address one of the district court's independent grounds for dismissal in its entirety and thus did not preserve any purported error as to that ground. For all these reasons, summary affirmance is warranted and oral argument will not significantly aid the Court in reaching its decision.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ ii

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF ISSUES PRESENTED ON APPEAL .......................................1

STATEMENT OF THE CASE..........................................................................1

STANDARD OF REVIEW ..............................................................................8

SUMMARY OF THE ARGUMENT ...................................................................9

I.     THE RECEIVER DEFENDANTS ARE ABSOLUTELY IMMUNE
       FROM SUIT FOR THE ACTIONS ALLEGED IN THIS CASE. .................11

       A.     Court-appointed receivers have judicial immunity, and this Court
              has already affirmed findings that bar all of Appellants' claims. ............11

       B.     Judge Furgeson's appointment of the receiver was entitled to
              immunity...............................................................................12

       C.     The attorney immunity doctrine bars all of Appellants' claims...............15

II.    APPELLANTS' SUIT FAILS TO STATE A CLAIM. ..................................16

       A.     This Court affirmed the release of the Receiver Defendants for
              anything other than gross negligence, and Appellants have waived
              any challenges to the release by failing to brief them in this Court.........16

       B.     Appellants' claims are an impermissible collateral attack on prior
              orders, and this Court has already decided against any gross
              negligence claims. .................................................................17

       C.     Appellants' suit is barred by collateral estoppel, any challenges to
              which Appellants already waived by failing to brief them in the
              district court...........................................................................20

              1.     Appellants failed to timely brief in the district court the arguments
                     that they now raise on appeal.........................................................20

              2.     All of the elements of collateral estoppel are met here. ...................22

III.  THIS SUIT WAS PROPERLY DISMISSED BECAUSE IT
      VIOLATES THE BARTON DOCTRINE AND APPELLANTS
      WAIVED ANY CHALLENGE BY FAILING TO BRIEF IT.........................25

      A.   The ultra vires exception is inapplicable...................................................27

      B.   The business exception is inapplicable. ....................................................28

      C.   Removal did not cure Appellants' Barton violation................................30

IV.  APPELLANTS' CLAIMS OTHERWISE FAIL. ...........................................31

      A.   Appellants waived any breach of contract claim by failing to
           defend it in the district court.......................................................................31

      B.   Appellants' claims properly were dismissed under Twombly and
           Iqbal. ............................................................................................................32

PRAYER ...........................................................................................................................34

CERTIFICATE OF SERVICE ...............................................................................35

ECF CERTIFICATION .............................................................................................36

CERTIFICATE OF COMPLIANCE.......................................................................36

# TABLE OF AUTHORITIES

## Cases

*Adams v. McIlhany*,
  764 F.2d 294 (5th Cir. 1985) ................................................................13

*Alpert v. Crain, Caton & James, P.C.*,
  178 S.W.3d 398 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ................15

*Ariel Preferred Retail Group, LLC v. CWCapital Asset Mgmt.*,
  883 F. Supp. 2d 797 (E.D. Mo. 2012) ................................................28

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................... 10, 32

*Ballard v. Wall*,
  413 F.3d 510 (5th Cir. 2005) ................................................................13

*Barton v. Barbour*,
  104 U.S. 126 (1881) ................................................................ passim

*Bass v. Stryker Corp.*,
  669 F.3d 501 (5th Cir. 2012) ................................................................8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................... 10, 32

*Benson v. Bank of Am., Nat. Ass'n*,
  No. 3:14-CV-1046-L, 2014 WL 2619859 (N.D. Tex. June 12, 2014) ..................9

*Black v. N. Panola Sch. Dist.*,
  461 F.3d 584 (5th Cir. 2006) ................................................................32

*Blixseth v. Brown*,
  470 B.R. 562 (2012) ................................................................29

*Calderon v. Bandera County*,
  No. SA-14-CV-881-XR, 2014 WL 6769694 (W.D. Tex. Dec. 1, 2014) .............13

*Cantey Hanger, LLP v. Byrd*,
  467 S.W.3d 477 (Tex. 2015) ................................................................15

*Carter v. Rodgers*,
  220 F.3d 1249 (11th Cir. 2000) ................................................................ 25, 29

*Cinel v. Connick*,
  15 F.3d 1338 (5th Cir. 1994) ................................................................9

*Clark v. Bakst* (*In re Trafford Distributing Center, Inc.*),
   520 B.R. 147 (Bankr. S.D. Fla. 2014) ...................................................................30

*Davis v. Bayless*,
   70 F.3d 367 (5th Cir. 1995) ................................................................ 9, 11, 12, 13

*Davis v. Tarrant Cnty., Tex.*,
   565 F.3d 214 (5th Cir. 2009) ........................................................................ 11, 12

*Diners Club, Inc. v. Bumb*,
   421 F.2d 396 (9th Cir. 1970) .............................................................................29

*Enriquez-Gutierrez v. Holder*,
   612 F.3d 400 (5th Cir. 2010) ..............................................................................9

*Estate of Jackson v. Sandnes*,
   No. 8:13-cv-1133-T-33MAP, 2014 WL 408757 (M.D. Fla. Feb. 3, 2014) .........28

*F.D.I.C. v. Mijalis*,
   15 F.3d 1314 (5th Cir. 1994) .............................................................................21

*Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*,
   716 F.3d 404 (6th Cir. 2013) .............................................................................27

*Grizzle v. Texas Commerce Bank, N.A.*,
   38 S.W.3d 265, 286 (Tex. App.—Dallas 2001),
   *rev'd in part on other grounds*, 96 S.W.3d 240 (Tex. 2002)..............................31

*Heavrin v. Schilling (In re Triple S. Rests., Inc.)*,
   342 B.R. 508 (Bankr. W.D. Ky. 2006), *aff'd*,
   519 F.3d 575 (6th Cir. 2008) .............................................................................30

*Herrera v. Gonzales (In re Herrera)*,
   472 B.R. 839 (Bankr. D. N.M. 2012) ................................................................30

*In re Coastal Plains, Inc.*,
   326 B.R. 102 (Bankr. N.D. Tex. 2005)....................................................... 26, 30

*In re Crown Vantage, Inc.*,
   421 F.3d 963 (9th Cir. 2005) .............................................................................29

*In re DeLorean Motor Co.*,
   991 F.2d 1236 (6th Cir. 1993) ...........................................................................26

*In re Shade, Inc.*,
   No. 08-4033, 2008 WL 3876327 (Bankr. D. Neb. Aug. 18, 2008)......................10

*In re Weisser Eycare, Inc.*,
   245 B.R. 844 (Bankr. N.D. Ill. 2000) ................................................................27

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ......................................................... 19, 24

*Kaliner v. Antonoplos (In re DMW Marine, LLC)*,
   509 B.R. 497 (Bankr. E.D. Penn. 2014) ............................................27

*Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno*,
   547 F.2d 1 (1st Cir. 1976).................................................................12

*Knowles v. U.S., ex rel. F.B.I.*,
   No. 4:07-CV-578, 2009 WL 2882956 (E.D. Tex. Aug. 31, 2009)......................32

*Lawrence v. Goldberg*,
   573 F.3d 1265 (11th Cir. 2009) .........................................................25

*Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*,
   331 F.3d 452 (5th Cir. 2003) .............................................................31

*Leonard v. Vrooman*,
   383 F.2d 556 (9th Cir. 1967) .............................................................27

*Malina v. Gonzales*,
   994 F.2d 1121 (5th Cir. 1993) ...........................................................13

*Matter of Gober*,
   100 F.3d 1195 (5th Cir. 1996) ...........................................................23

*Med. Dev. Int'l v. Cal. Dep't Corrs. & Rehab.*,
   585 F.3d 1211 (9th Cir. 2009) ...........................................................29

*Muratore v. Darr*,
   375 F.3d 140 (1st Cir. 2004)..............................................................29

*Netsphere Inc. v. Baron*,
   No. 3:09-CV-0988-L, 2015 WL 1400543 (N.D. Tex. March 27, 2015)...... passim

*Netsphere v. Baron*,
   703 F.3d 296 (5th Cir. 2012) ..................................................... passim

*Netsphere, Inc. v. Baron*,
   799 F.3d 327 (5th Cir. 2015) ..................................................... 6, 7, 20

*Netsphere, Inc. v. Baron*,
   No. 3:09-CV-0988-F, 2013 WL 3327858 (N.D. Tex. May 29, 2013) ......... passim

*Netsphere, Inc. v. Gardere Wynne Sewell LLP*,
   No. 15-10341, 2016 WL 3667573 (5th Cir. July 8, 2016) ........................ passim

*New Alaska Dev. Corp. v. Guetschow*,
   869 F.2d 1298 (9th Cir. 1989) ..................................................... 33, 34

*Pierson v. Ray*,
    386 U.S. 547 (1967)............................................................................12

*Price v. Deeba*,
    No. CIV-14-319-D, 2014 WL 4660810 (W.D. Ok. Sept. 17, 2014)...................28

*Procter & Gamble Co. v. Amway Corp.*,
    376 F.3d 496 (5th Cir. 2004) ............................................... 1, 8, 10, 27

*Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*,
    583 F.3d 348 (5th Cir. 2009) ..............................................................22

*San Saba Energy, L.P. v. McCord*,
    167 S.W.3d 67 (Tex. App.—Waco 2005, pet. denied).........................................31

*Schafler v. Field*,
    No. 09-984, 2001 WL 34553964 (D. Md. Aug. 15, 2001), *aff'd*,
    26 Fed. App'x 315 (4th Cir. 2002) .........................................................29

*Schecter v. State of Illinois, Dep't of Revenue (In re Markos Gurnee P'ship)*,
    182 B.R. 211 (Bankr. N.D. Ill. 1995) ...................................................27

*SEC v. W.L. Moody & Co., Baners (Unincorporated)*,
    374 F. Supp. 465 (S.D. Tex. 1974).......................................................25

*Singleton v. Wulff*,
    428 U.S. 106 (1976).....................................................................21

*Southmark Corp. v. Coopers & Lybrand*,
    163 F.3d 925 (5th Cir. 1999) ............................................................25

*Teton Millwork Sales v. Schlossberg*,
    311 Fed. Appx. 145 (10th Cir. 2009).....................................................27

*Troice v. Proskauer Rose, L.L.P.*,
    816 F.3d 341 (5th Cir. 2016) ...................................................... 11, 15

*U.S. Bank Nat'l Ass'n v. Sheena*,
    479 S.W.3d 475 (Tex. App.—Houston [14th Dist.] 2015, no pet.) .....................15

*U.S. ex rel. Phillips v. L-3 Commc'ns Integrated, Sys. L.P.*,
    No. 3:10-CV-1784, 2012 WL 3649699 (N.D. Tex. Aug. 24, 2012) ...................32

*Villegas v. Schmidt*,
    No. 2:13-CV-343, 2014 WL 1356544 (S.D. Tex. Apr. 4, 2014) .........................26

**Statutes**

28 U.S.C. § 1291 .........................................................................1

28 U.S.C. § 1452 ...........................................................................................7

28 U.S.C. § 959 ...........................................................................................29

28 U.S.C. § 959(a) ......................................................................................28

28 U.S.C. §§ 1442(a) ...............................................................................1, 7

**Rules**

FED. R. APP. P. 28(a)(8) ........................................................... 1, 8, 10, 27

FED. R. APP. P. 39 .......................................................................................34

FED. R. APP. P. 4(a)(4) .................................................................................1

FED. R. CIV. P 12(b)(6) ................................................................................8

FED. R. CIV. P. 11(b) .................................................................................21

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under the federal officer removal statute, 28 U.S.C. §§ 1442(a).[1] This Court has jurisdiction under 28 U.S.C. § 1291. *See* FED. R. APP. P. 4(a)(4).

## STATEMENT OF ISSUES PRESENTED ON APPEAL

Should this Court affirm the district court's memorandum opinion and final judgment dismissing this action with prejudice, among other reasons because Appellants have waived any purported complaints regarding dispositive grounds for affirmance by failing to raise or brief them, the claims are barred by immunity, Vogel and Gardere have been released and did not commit gross negligence, and both collateral estoppel and the *Barton* doctrine bar Appellants' claims?

## STATEMENT OF THE CASE

On November 24, 2010, the U.S. District Court for the Northern District of Texas, Judge Royal Furgeson presiding, entered an Order Appointing Receiver (Dkt. 124 in No. 3:09-CV-00988-F) (the "Receivership Order") that spawned years of vexatious and expensive litigation in this Court, the district court, the

---

[1] Appellants baselessly disputed the district court's jurisdiction after violating the *Barton* doctrine by filing this case – against a federally-appointed receiver and his law firm – in state court, despite years of related federal litigation. *See* Section III, *infra*. Appellees removed this case to federal court, District Judge Lindsay denied Appellants' motion to remand, and Appellants now concede that the district court had jurisdiction. More importantly, Appellants waived any challenge to dismissal on *Barton* grounds by failing to brief the issue. *See* ROA.35, 214-223, 775-785, and 799; *see also* Appellants' Br. at 1; *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) (failing to raise a claim or adequately brief it in appellant's brief constitutes waiver); *see also* FED. R. APP. P. 28(a)(8).

1

bankruptcy court, and the Dallas County district court from which this suit was removed.

The Receivership Order granted Peter S. Vogel, as receiver, "exclusive control" over Appellant Jeffrey Baron and two entities in which Baron had or has an indirect interest – Appellants NovoPoint and Quantec.[2] Appellants' claims all arise from Vogel's service as a court-appointed receiver and Gardere's conduct as receiver's counsel, which have been the subject of several prior appellate and district court decisions that Appellants impermissibly collaterally attack in this latest suit.

The district court properly dismissed Appellants' amended complaint because Vogel and Gardere (the "Receiver Defendants") have derived judicial immunity from suit as court officers. As the district court alternatively held, the *Barton* doctrine bars Appellants' claims. Appellants' brief fails to challenge dismissal on *Barton* grounds. Any such arguments are waived, which provides an independent and speedy basis for affirmance. Appellants' brief also fails to challenge the Court-ordered release for any conduct by the Receiver Defendants

---

[2] The Receivership Order "grant[ed] the Receiver exclusive control over, any and all 'Receivership Parties', which term shall include Jeffrey Baron and the following entities: . . . Novo Point, Inc., a USVI Corporation . . . [and] Quantec, Inc., a USVI Corporation." Receivership Order at 1. On motion, the Court later clarified that "that the Receiver Order's definition of Receivership parties has always included NovoPoint, LLC and Quantec, LLC." *Netsphere* Dkt. 176 in case No. 3:09-CV-00988-L, at 1. The Receivership Order and a collection of other documents subject to judicial notice are enclosed for the Court's convenience in a supplemental appendix filed contemporaneously herewith.

not amounting to gross negligence, which also bars all of their claims. Further, Appellants waived any arguments about collateral estoppel by failing to brief them in the district court.

Appellants' brief to this Court largely tracks their amended complaint (with a few new adjectives and some wordsmithing), but the reality remains as the district court recognized when it dismissed all claims with prejudice:

> While [Appellants] allege with respect to each claim that [the Receiver Defendants'] acts were "ultra vires in nature," such allegations are conclusory and not supported by any facts that [the Receiver Defendants] were acting outside the scope of Judge Furgeson's receivership orders and the broad authority granted to the receiver.

ROA.797 (Memorandum Opinion and Order at 12).

The Baron saga began in 2009 as a contractual dispute between Netsphere, Inc. and appellant Baron. *See Netsphere v. Baron*, 703 F.3d 296, 302 (5th Cir. 2012) ("*Netsphere I*"). One of Baron's companies, Ondova Limited Company, declared bankruptcy, and Baron repeatedly hired, fired, and failed to pay 45 lawyers. *Id*. at 303. Baron engaged in numerous forms of conduct for which the district court "could have held Baron in contempt, imposed a fine or imprisoned him for 'disobedience . . . to its lawful . . . command.'" *Id*. at 311. "Eventually, on the recommendation of the bankruptcy court, the district court appointed Peter S. Vogel as receiver over Baron." *Id*. at 304.

Baron appealed the Receivership Order, which this Court reversed in *Netsphere I*, "recogniz[ing] that the receivership was imposed as a result of Baron's own vexatious conduct,"[3] but nevertheless concluding that the district court had "no authority to . . . establish[] a receivership" in order "to control Baron's hiring, firing, and non-payment of numerous attorneys." 703 F.3d at 305; *see also id.* at 308, 310-11 (finding that "the receivership was established to pay the attorneys and to control vexatious litigation").

The *Netsphere I* panel held that "the circumstances that led to the appointment of a receiver were primarily of Baron's own making," and ordered an "equitable solution" under which the receivership assets would be charged for "reasonable receivership expenses." *Id.* at 313. It remanded with instructions requiring the district court to wind up the receivership, reconsider the amount of fees and expenses that would be appropriate, and charge such fees and expenses against the receivership fund. *Id.* at 313, 315. In a subsequent order, this Court clarified that "our [*Netsphere I*] opinion did not dissolve the receivership immediately" but "ordered a remand for the expeditious winding up of the receivership" in a process to be managed by the district court "as quickly as possible." Order dated December 31, 2012 in Fifth Circuit case No. 10-11202.

---

[3] *See Netsphere, Inc. v. Gardere Wynne Sewell LLP*, No. 15-10341, 2016 WL 3667573, at *1 (5th Cir. July 8, 2016) ("*Netsphere III*").

4

Under this Court's mandate, the district court conducted a three-day hearing on the receivership professionals' fee applications and, in May 2013, issued a fee award in favor of the Receiver Defendants and certain other parties. *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F, 2013 WL 3327858 (N.D. Tex. May 29, 2013) (the "2013 Fee Order"). The 2013 Fee Order expressly found that Gardere's work was performed "***in good faith and with an abundance of care***," and characterized "Gardere's management of the estate [as] ***exemplary***." *Id.* at *16-17 (emphasis added).

As for Vogel, the 2013 Fee Order found that "[h]e accepted and approached his obligations with ***great care*** and made thoughtful decisions that benefitted the property under his control," despite being "hindered from the outset by Baron's uncooperative and disruptive litigation tactics." *Id.* at *21 (emphasis added). Vogel's work was "***exemplary and entirely appropriate*** . . . ." *Id.* at *22 (emphasis added).

Baron, NovoPoint, and Quantec each appealed. *See* June 28, 2013 Notice of Appeal, Dkt. 1297 in N.D. Tex. No. 3:09-CV-00988-L, creating Fifth Circuit case No. 13-10696.[4] This Court dismissed their appeals for want of appellate

---

[4] District Court case No. 3:09-CV-0988-F was re-designated No. 3:09-CV-0988-L when it was re-assigned to District Judge Lindsay upon District Judge Furgeson's retirement. Fifth Circuit case No. 13-10696 was consolidated on April 22, 2015 with a previous Baron appeal of other fee orders pending as Fifth Circuit case No. 13-10119. *See* Clerk's Letter dated April 22, 2015 and filed in both cases. *See also Netsphere II*, 799 F.3d at 330 n.11 (describing orders appealed in the consolidated cases).

jurisdiction in August 2015. *Netsphere, Inc. v. Baron*, 799 F.3d 327 (5th Cir. 2015) ("*Netsphere II*").

On March 27, 2015, the district court overruled Baron's objections accusing Vogel of gross negligence and breach of fiduciary duty, and "entered another thorough order discharging the receiver and awarding additional fees to the receiver, his attorneys, and his employees," which this Court ultimately affirmed in *Netsphere, Inc. v. Gardere Wynne Sewell LLP*, No. 15-10341, 2016 WL 3667573, at *1 (5th Cir. July 8, 2016) ("*Netsphere III*"). Importantly, the 2015 Fee Order, *Netsphere Inc. v. Baron*, No. 3:09-CV-0988-L, 2015 WL 1400543 (N.D. Tex. March 27, 2015), found that "the Receiver has complied with the orders of the court; and conclude[d] that the Receivership was operated and concluded in keeping with the mandate of the Fifth Circuit and prior orders of [the district] court and the bankruptcy court." *Id.*, at *9. Finally, the 2015 Fee Order released the Receiver Defendants "except for acts of gross negligence, from all claims and liabilities arising out of or pertaining in any way to the Receivership . . . ." *Id.* at *10.

Confusingly, in April 2015 (with *Netsphere II* still pending), Baron, NovoPoint, and Quantec each re-appealed the 2013 Fee Order, and also appealed the 2015 Fee Order; these appeals created Fifth Circuit case No. 15-10341.

6

Baron's appeal, noticed on April 16, 2015 (Dkt. 1451 in N.D. Tex. case No. 3:09-CV-00988-L) was dismissed for want of prosecution on November 25, 2015. *See* Per Curiam Order dated November 25, 2015 (Fifth Circuit case No. 15-10341). In response, Baron sought a writ of certiorari from the United States Supreme Court, which was denied on May 16, 2016. *See* Clerk's Letter filed May 17, 2016 in Fifth Circuit case No. 15-10341.

NovoPoint's and Quantec's appeal, noticed on April 25, 2015 (Dkt. 1452 in N.D. Tex. case No. 3:09-CV-00988-L), however, was not dismissed and ultimately gave rise to the decision in *Netsphere III*. In *Netsphere III*, this Court found that the 2013 Fee Order and 2015 Fee Order (collectively, the "Fee Orders") are "not themselves 'final orders.'" 2016 WL 3667573 at *2 (quoting *Netsphere II*, 799 F.3d at 335-36). Nevertheless, the Court found ample jurisdiction to resolve *Netsphere III* under the collateral order doctrine, 2016 WL 3667573, at *2-3, and affirmed both Fee Orders, along with 26 other fee orders granted between April 2011 and January 2014. *Id.* at *2, *10. NovoPoint and Quantec filed a July 22, 2016 petition for *en banc* rehearing, which was denied on August 19, 2016.

Appellants filed this case as a state court lawsuit on November 24, 2014 – when the briefing in *Netsphere II* was nearly complete and a few months before the notices of appeal were filed in *Netsphere III*. ROA.35. Appellees removed the case to federal court under 28 U.S.C. §§ 1442(a) and, alternatively, 28 U.S.C. § 1452,

on January 22, 2015. ROA.9. On September 25, 2015, the district court denied Appellants' motion to remand in a memorandum opinion and order, from which Appellants do not appeal. ROA.775-85.

On March 31, 2016, the district court entered a memorandum opinion and final judgment dismissing Appellants' amended complaint with prejudice. ROA.786-800. Appellants filed their notice of appeal on April 29, 2016. ROA.801.

## STANDARD OF REVIEW

There are grounds for affirmance Appellants failed to address in their brief which have been waived. This Court can determine that Appellants' failure to raise a claim or adequately brief it constitutes waiver. *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004); *see also* FED. R. APP. P. 28(a)(8).

This Court reviews dismissal under FED. R. CIV. P 12(b)(6) *de novo*. *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must allege enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).

When, as here, other panels of this Court already have adjudicated the same

facts and claims, courts "may take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom." *See Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 410-11 (5th Cir. 2010) (citation omitted). It is well-established that "[f]ederal courts are permitted to refer to matters of public record when deciding a 12(b)(6) motion to dismiss." *Davis v. Bayless*, 70 F.3d 367, 372 (5th Cir. 1995) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994)). Affirmative defenses such as collateral estoppel can be addressed through a motion to dismiss if the elements are apparent on the face of the pleadings, while considering matters of which judicial notice may be taken. *Benson v. Bank of Am., Nat. Ass'n*, No. 3:14-CV-1046-L, 2014 WL 2619859, at *3 & n.2 (N.D. Tex. June 12, 2014) (Lindsay, J.).

## SUMMARY OF THE ARGUMENT

Appellants failed to address one of the district court's independent grounds for dismissal in its entirety and thus did not preserve any purported error as to that ground. The district court found that filing this suit in state court violated the *Barton* doctrine, which requires parties to obtain permission from the appointing court before bringing suit against a federally-appointed receiver in another forum. ROA.799; *see also* ROA.658-63, 751-52. Appellants waived any complaint about dismissal on *Barton* grounds by failing to address it in their brief. *Barton* dismissal indisputably was proper in this case, and Appellants' *Barton* violations and

frivolous jurisdictional challenges in the district court warrant sanctions.[5]

Appellants' March 20, 2015 Amended Complaint[6] also fails to state a claim for many reasons, including derived absolute judicial immunity and attorney immunity which bar all of Appellants' claims.

Further, this Court's *Netsphere III* opinion affirmed the district court's 2013 and 2015 Fee Orders, the latter of which discharged and released the Receiver Defendants "except for acts of gross negligence, from all claims and liabilities arising out of or pertaining in any way to the Receivership . . . ." *See Netsphere III*, 2016 WL 3667573, at \*4; 2015 Fee Order, 2015 WL 1400543, at \*10. This release – which Appellants do not brief or challenge on appeal – disposes of all claims because this Court already has affirmed numerous findings that negate gross negligence. Any purported "gross negligence" claim thus is an improper collateral attack on the Fee Orders that is barred by this Court's decisions in *Netsphere I* and *III*, and is implausible under *Twombly* and *Iqbal* standards.

For all these reasons, this Court should affirm the dismissal of all claims with prejudice.

---

[5] *See, e.g., In re Shade, Inc.*, No. 08-4033, 2008 WL 3876327, at \*3 (Bankr. D. Neb. Aug. 18, 2008) ("The Bankruptcy Court has denied Plaintiff's claims, as have the appellate courts. Plaintiff cannot simply start over and make the same claims again, only in state court. Plaintiff has not acted in good faith."); *Procter & Gamble*, 376 F.3d at 499 n.1 (failing to raise a claim or adequately brief it in appellant's brief constitutes waiver); *see also* FED. R. APP. P. 28(a)(8).
[6] ROA.584-622.

## I.     THE RECEIVER DEFENDANTS ARE ABSOLUTELY IMMUNE FROM SUIT FOR THE ACTIONS ALLEGED IN THIS CASE.

Under Fifth Circuit precedent, receivers are entitled to absolute immunity derived from the judge's absolute immunity[7] and lawyers have "immunity from suit"[8] from adversaries like Baron, regardless of the labels applied to their claims. As the district court correctly held, these immunities bar all of Appellants' claims.

### A.     Court-appointed receivers have judicial immunity, and this Court has already affirmed findings that bar all of Appellants' claims.

In *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995), the Fifth Circuit held that court-appointed receivers derive absolute judicial immunity, provided that two conditions are satisfied. First, the receiver's actions had to be "taken in good faith and within the scope of the authority granted to the receiver." *Id.* at 373. Second, because the receiver's immunity derives from the judge's immunity, the judge must have had immunity for his appointment of the receiver. *Id.*

As shown in Appellees' statement of the case and explained further in Section II below, this Court has already affirmed findings by the district court that the Receiver Defendants' actions were taken in *good faith*, with *an abundance of care*, and *in compliance with court orders*. Indeed, the Receivership Order's

---

[7] Judges are entitled to "absolute immunity from suits for damages." *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214 (5th Cir. 2009).

[8] *See Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346, 348 (5th Cir. 2016).

breadth,[9] along with this Court's *Netsphere I* and *III* decisions described above, foreclose any contrary findings. This satisfies the first element of immunity under *Bayless*.[10]

### B.     Judge Furgeson's appointment of the receiver was entitled to immunity.

"There are only two circumstances under which judicial immunity may be overcome." *Davis v. Tarrant Cnty., Tex.*, 565 F.3d at 221. The first occurs if the judge's actions are not judicial in nature. *Id.* The second occurs when the actions are judicial in nature, but the judge took them "in the complete absence of all jurisdiction." *Id.*

Neither exception applies. Appointing a receiver is a quintessential judicial function.[11] Judge Furgeson issued the Receivership Order in his official capacity

---

[9] *See* Receivership Order at 1-3, 6-8 (granting Vogel "exclusive control" over all Receivership Parties, including Baron, along with any of their assets wherever located, and also granting Vogel various express powers, including the power to divert mail, enter contracts, and choose and retain counsel and other professionals); *see also* ROA.796 (district court's dismissal order at 11, recognizing breadth of Receivership Order and holding that Vogel's alleged conduct does not exceed its scope).

[10] Courts repeatedly have recognized that denying immunity to a receiver who faithfully carries out the appointing judge's orders "would seriously encroach on the judicial immunity already recognized by the Supreme Court." *Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976) (citing *Pierson v. Ray*, 386 U.S. 547 (1967)). Even worse, recognizing that they would become "lightning rod[s] for harassing litigation," the most qualified receivers would likely balk at a court's request to take an appointment. *Kermit Constr. Corp.*, 547 F.2d at 3. Thus, a receiver is absolutely immune from suit for actions "intimately connected with his receivership duties."

[11] The Fifth Circuit employs a four-factor test to determine whether a judge's actions were taken in the judge's judicial capacity: "(1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the

and in a case pending before his court. The Receivership Order thus was a judicial act.[12]

The question thus becomes whether Judge Furgeson's appointment of the receiver was in "complete absence of all jurisdiction," which it was not. "Where a court has some subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Adams v. McIlhany*, 764 F.2d 294, 298 (5th Cir. 1985). "[T]he proper inquiry is not whether the judge actually had jurisdiction, or even whether the court exceeded its jurisdictional authority, but whether the challenged actions were obviously taken outside the scope of the judge's power." *Bayless*, 70 F.3d at 373.[13]

In the district court, Appellants incorrectly characterized *Netsphere I* as suggesting that Judge Furgeson acted in complete absence of all jurisdiction when entering the Receivership Order, and made extensive but erroneous arguments that the Receiver Defendants are not entitled to judicial immunity. *See* ROA.215-19, 718-25. But the Fifth Circuit merely concluded that Judge Furgeson **exceeded** his authority and jurisdiction by appointing a receiver over property not in dispute, and

---

court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity." *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993).

[12] The obviousness of this conclusion likely explains why the *Bayless* court did not even evaluate whether appointing a receiver is a judicial function.

[13] "[M]erely act[ing] in excess of authority" does not result in a loss of immunity. *Ballard v. Wall*, 413 F.3d 510, 517 (5th Cir. 2005). Moreover, "[t]he alleged magnitude of the error or mendacity of the acts is irrelevant." *Calderon v. Bandera County*, No. SA-14-CV-881-XR, 2014 WL 6769694, at *11 (W.D. Tex. Dec. 1, 2014).

never held that there was a complete **absence** of all jurisdiction. *See Netsphere I*, 703 F.3d at 310; *see also* ROA.782-84 (district court's holding that Judge Furgeson had jurisdiction over the *Netsphere* case, and thus did not act in complete absence of all jurisdiction when he appointed the receiver). Thus, because Judge Furgeson had immunity, so do the Receiver Defendants. ROA.794-97 (memorandum op. and order of dismissal with prejudice); *see also* ROA.779-785 (order denying Appellants' motion to remand, the immunity aspects of which were incorporated by reference into the dismissal order).

Appellants' briefing to this Court omits and waives any argument that Judge Furgeson lacked jurisdiction or immunity and similarly waives any argument that the Receiver Defendants never became judicial officers.[14] The decisions in *Netsphere I* (which rejected any finding of malice or wrongful purpose in the creation of the receivership) and *Netsphere III* (which affirmed the Fee Orders) foreclose any argument that the Receiver Defendants acted other than in good faith and within the scope of the authority granted to them. Thus, as the district court found, derived judicial immunity bars all of Appellants' claims.

---

[14] Appellants incorrectly argued to the district court that Vogel never achieved status as a duly-appointed judicial officer because the district court lacked subject matter jurisdiction over the receivership property. *See* ROA.721-25. They do not re-urge these arguments here, which are waived. In any event, these arguments fail for the reasons stated in the Receiver Defendants' motion to dismiss and supporting reply. *See* ROA.653-54, 747-750.

### C.   The attorney immunity doctrine bars all of Appellants' claims.

The trial court properly determined that attorneys are immune from liability to non-clients like Appellants for actions taken in connection with representing other clients, like the receiver. ROA.798.

Under Texas law, an attorney is immune from suit by non-clients – even for wrongful conduct – "if it is part of the discharge of the lawyer's duties in representing his or her client."[15] Attorney immunity is an immunity from suit – not merely a defense to liability.[16] Characterizing immunized actions as fraud, misrepresentation, conspiracy, or other things does not make any difference – they are "not actionable."[17]

Appellants try to run from this immunity by arguing repeatedly in their brief that Vogel somehow was Baron's attorney, citing a single statement Vogel made during a receivership meeting while explaining to an attorney Baron had hired against court orders that Vogel – as receiver – was unwilling to authorize the hiring

---

[15] *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (internal quotations omitted).

[16] *See Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346, 348 (5th Cir. 2016) (attorney immunity is an issue "completely separate from the merits of the action" and "conclud[ing] that the Texas Supreme Court would consider attorney immunity to be a true immunity from suit," making "conduct covered by attorney immunity . . . not actionable").

[17] *Cantey Hanger, LLP*, 467 S.W.3d at 483 (even "***fraud*** is not an exception to immunity") (emphasis added); *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding claim against attorney for ***conspiracy*** to defraud was not actionable when the challenged actions involved "the providing of legal advice upon which the client acted, and . . . acts taken and communications made to facilitate the rendition of legal services to [the client]."); *U.S. Bank Nat'l Ass'n v. Sheena*, 479 S.W.3d 475, 480–81 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (applying attorney immunity to plaintiffs' claim of tortious interference with a contract). Thus, the Receiver Defendants are immune from this suit.

of additional lawyers for Baron.[18] Vogel was Baron's receiver, not Baron's lawyer, and Appellants' amended complaint did not assert a malpractice claim. Attorney immunity thus applies.

## II.   APPELLANTS' SUIT FAILS TO STATE A CLAIM.

### A.   This Court affirmed the release of the Receiver Defendants for anything other than gross negligence, and Appellants have waived any challenges to the release by failing to brief them in this Court.

In its 2015 Fee Order, the district court recognized that "the Receiver, and the Receiver's professionals, have received a fair amount of unwarranted negative publicity and treatment at the hands of Baron and his supporters," *including this suit*. *See* 2015 Fee Order, 2015 WL 1400543, at *3 n.2. More importantly, the 2015 Fee Order holds that:

> Upon termination of the Receivership estate, the Receiver and Receiver Released Parties [including Gardere] shall be **discharged** and **released**, except for acts of gross negligence, from all claims and liabilities arising out of or pertaining to the Receivership . . . .

*Id*. at *10 (emphasis in original). The receivership now has terminated, as stated in the receiver's April 6, 2015 notice of compliance with the Court's 2015 Fee Order.

*See* Dkt. 1449 in case No. 3:09-CV-00988-L. The release is in full effect.

---

[18] *See* Dkt. 1357-4 in case No. 3:09-CV-00988 at 3 (Mr. Vogel: "I am the counsel for Mr. Baron. And that's what the judge said. So now we're going to move on from that issue. We're not hiring any new lawyers . . . . You were hired and Mr. Barrett [was] hired without the authority of the Court. And I've been saying this for almost two years, first as special master and now as receiver, Mr. Baron has serially hired lawyers in spite of orders that preclude him from doing that."); *see also id*. at 4 (Mr. Vogel: Fine. But what I'm telling you is we're not hiring any new lawyers. Mr. Schepps: Well, the judge said we could request one. Mr. Vogel: Fine. You requested. Request denied. Now let's move on. Mr. Schepps: Okay. Well, we'll request to the judge like the judge told us to.").

Baron, NovoPoint, and Quantec already appealed the 2015 Fee Order, and they lost when it was affirmed in *Netsphere III* – a few months after the order of dismissal with prejudice in this case that Baron, NovoPoint, and Quantec challenge here. Appellants fail even to mention the 2015 Fee Order's release in their brief, and thereby concede its validity.[19] Thus, the Receiver Defendants have been released and cannot be held liable in this case for anything less than gross negligence.

### B.    Appellants' claims are an impermissible collateral attack on prior orders, and this Court has already decided against any gross negligence claims.

Appellants previously admitted in their district court briefing that "[i]f the appeals of the attorney fees awarded by this Court to Vogel and his professionals are unsuccessful, [Appellants] will still not be able to bring claims to reverse these awards in this case, nor will [Appellants] attempt to do so."[20] And those appeals *were* unsuccessful, because this Court affirmed the Fee Orders in *Netsphere III*.

Undaunted, however, Appellants filed the instant appeal re-urging the same claims that they were damaged by the receiver's appointment and associated fees. *See* Appellants' Br. at 9-23. But findings of this Court and the district court bar any

---

[19] In contrast, Appellants argued in the district court that the release was invalid, pointing to their prior appeal (*Netsphere III*, which they ultimately lost). ROA.723, 732-34. Because Appellants failed to re-urge any challenges to the release in this appeal, they are waived. In any event, the release is valid for the reasons stated in the Receiver Defendants' reply supporting their motion to dismiss. *See* ROA.744-46.

[20] Pls. Reply Supporting Mot. to Remand, ¶ 5. ROA.575.

claim of gross negligence, as shown in the Fee Orders and all three *Netsphere* decisions of this Court. All of Appellants' claims thus fail.

Gross negligence requires a finding of conscious indifference, which is negated by the district court's affirmed findings of "good faith" and "an abundance of care,"[21] along with this Court's holding that there was "no malice nor wrongful purpose" in the creation of the receivership. [22]

The 2013 Fee Order, for example, holds that Vogel's work was "exemplary and entirely appropriate," 2013 WL 3327858, at *22, and that Gardere performed its work for the receiver "in ***good faith*** and with an ***abundance of care,***" *id.* at *16 (emphasis added). Likewise, in the 2015 Fee Order, the district court "**confirm[ed]** that the Receiver has complied with the orders of the court; and **conclude[d]** that the Receivership was operated and concluded in keeping with the mandate of the Fifth Circuit and prior orders of [the district] court and the bankruptcy court." 2015 Fee Order, 2015 WL 1400543, at *9-10 (emphasis in original). Both Fee Orders were affirmed in *Netsphere III*. *See* 2016 WL 3667573.

Appellants try to relitigate the receivership by arguing repeatedly that the receiver and his counsel, Gardere, acted improperly and in a concerted fashion in obtaining the receivership. Appellants' Br. 8-12, 31-33. But this Court already held that the district court entered the Receivership Order to bring a halt to Baron's

---

[21] 2013 Fee Order, 2013 WL 3327858, at *16, *aff'd,* 2016 WL 3667573.
[22] *Netsphere I*, 703 F.3d at 313.

"longstanding vexatious litigation tactics," and *rejected* Baron's contention that the appointment of the Receiver was in bad faith or collusive. *Netsphere I*, 703 F.3d at 310-13 ("[W]e hold, based on this record, that in creating the receivership *there was no malice nor wrongful purpose*, and only an effort to conserve property in which the court believed it was interested in maintaining for unpaid attorney fees and to control Baron's vexatious litigation tactics.") (internal quotations omitted). This Court also held that "the record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making." *Id.*; *see also* 2013 Fee Order, 2013 WL 3327858, at *14 ("[T]here was *no malice or collusion and no intent to cause harm* to Mr. Baron.") (emphasis added). These findings bar Appellants' claims based on alleged pre-receivership conduct.

Appellants also accuse the Receiver Defendants of breaching duties, squandering assets, and using assets under receivership to defend the receivership itself. Appellants' Br. 12-23. But the 2013 Fee Order already rejected such complaints, finding Vogel's work "*exemplary and entirely appropriate*," 2013 WL 3327858, at *22 (emphasis added), and conducting an extensive *Johnson* analysis before holding that "Gardere performed [its] work in *good faith and with an abundance of care,*" *id.* at *16-17 (emphasis added). The same order expressly holds that "[t]o the extent that fees were incurred in defending the Receivership Order itself, the Court finds that charging the estate is proper . . . ." *Id.* at *5. And

both this Court and the district court have blamed Baron – not the Receiver Defendants – for the high fees and other expenses that Baron himself caused. *See id*. at *4-5, 9, 16-17;[23] 703 F.3d at 310-13.

### C. Appellants' suit is barred by collateral estoppel, any challenges to which Appellants already waived by failing to brief them in the district court.

#### 1. Appellants failed to timely brief in the district court the arguments that they now raise on appeal.

In the district court, Appellants responded to the Receiver Defendants' thoroughly briefed collateral estoppel argument[24] with a lone paragraph arguing erroneously that collateral estoppel cannot be decided on a motion to dismiss. *See* ROA.734. The Receiver Defendants refuted this argument in their reply, citing decisions of this Court and the district court. *See* ROA.746-47. Almost one month later, Appellants filed an unauthorized 39-page sur-reply attempting to respond to Appellees' collateral estoppel arguments on the merits, which the district court struck as untimely. *See* ROA.759-61 (order striking brief and requiring Appellants'

---

[23] *See also id.* at *21 ("Throughout the course of the Receivership . . . Mr. Vogel[] . . . . accepted and approached his obligations with great care and made thoughtful decisions that benefitted the property under his control. In addition, his task was hindered from the outset by Baron's uncooperative and disruptive litigation tactics.").

[24] Appellees also argued in the district court that the Fee Orders bar Appellants' claims under res judicata. In *Netsphere III*, after the motion to dismiss briefing was complete, this Court affirmed both Fee Orders but held that they are "not themselves 'final orders.'" 2016 WL 3667573, at *2 (quoting *Netsphere II*, 799 F.3d at 335-36). Appellees thus do not re-urge res judicata in this Court based on the 2013 and 2015 Fee Orders.

counsel to show cause why filing the improper sur-reply did not violate FED. R. CIV. P. 11(b)).[25]

Now – without disclosing that their arguments against collateral estoppel were waived in the district court because they were briefed only in the stricken sur-reply – Appellants improperly try to revive such arguments by claiming that application of collateral estoppel would be unfair. Appellants' Br. at 36-41. Neither these arguments nor Appellants' vague pleas for a redo are persuasive, because all of Appellants' arguments could have been raised in the district court but were not. Under well-established law, they have been waived. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); *F.D.I.C. v. Mijalis*, 15 F.3d 1314 (5th Cir. 1994) ("If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal.").

---

[25] The district court's show-cause order explained that "[o]n its face, the failure to comply with the court's rules applicable to surreplies and page limitations appears innocent; however, the court is well aware of Plaintiffs' and their counsel's history of disruptive conduct and abusive litigation tactics in this and related cases. Such conduct includes, but is not limited to the assertion of frivolous arguments and the frequent labeling of surreplies as motions, objections, or responses in an attempt to do an 'end-run' around the court's Local Civil Rules." ROA.760. The district court ultimately decided not to sanction Appellants and their counsel "this time" but expressly refused to "condone the manner in which they handled and attempted to manipulate and unnecessarily complicate the resolution of the issues raised in the Motion to Dismiss." ROA.791.

### 2.    All of the elements of collateral estoppel are met here.

To establish collateral estoppel under federal law, one must show: (1) the issue is identical to the issue involved in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation was a crucial and necessary part of the judgment. *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009).

The identical issues in this suit previously were presented to the Fifth Circuit in *Netsphere I*, and to the district court in connection with the 2013 and 2015 Fee Orders that were affirmed in *Netsphere III*. In Baron's *Netsphere I* March 28, 2011 Fifth Circuit brief, he complained that the receivership was wrongful and sought to "recover the costs of the receivership from those who have wrongfully provoked it." Brief at 69-71 (No. 10-11202). And just as in this case, Baron accused those who sought the receivership of having an unfounded claim and allegedly misrepresenting facts. *Id*. But because the Fifth Circuit rejected these accusations in *Netsphere I*, Appellants are collaterally estopped from raising them again here.

Likewise, after the panel decision in *Netsphere I*, on May 8, 2013, Baron objected to the Receiver Defendants' fee applications in the district court. Dkt. 1269 in case No. 3:09-CV-00988-L.[26] Baron argued, among other things, that the Receiver Defendants should receive no fees because of their alleged breaches of

---

[26] *See also* Dkt. No. 1271 (Netsphere's objection to Receiver Defendants' fee application).

fiduciary duty and waste. *See id.* The next day, Baron sought leave to amend his pleadings to assert claims including purported "breaches of fiduciary duties, malpractice, negligence, ***gross negligence***, fraud and other causes of action" against the Receiver Defendants, trustee Sherman, and his attorneys at Munsch Hardt. Dkt. 1270 in No. 3:09-CV-00988-L (emphasis added). These issues were litigated and decided ***against*** Baron in the 2013 Fee Order, as the district court itself recognized. *See* 2013 Fee Order; *see also* Dkt. 1289 in case No. 3:09-CV-00988-L (electronic order finding that Baron's motion for leave to amend his pleadings against the fee applications was moot, because the issues raised therein were ruled upon in the 2013 Fee Order); *In re Gober*, 100 F.3d 1195, 1203-04 (5th Cir. 1996) (explaining that an issue is "actually litigated" when it is properly raised by the pleadings, or otherwise submitted for a determination, and actually determined). Baron cannot raise the same failed arguments again in this case.

Finally, Baron raised many of the same arguments (including gross negligence and breach of fiduciary duty) against Vogel's next fee application. *See* Dkt. 1400 in case No. 3:09-CV-00988-L. They were litigated and decided against Appellants in the now-affirmed 2015 Fee Order, which found that the receiver complied with the orders of the Court and operated the receivership in keeping with the mandates of the Fifth Circuit and the district court. 2015 Fee Order, 2015 WL 1400543, at *9.

The foregoing rulings were crucial and necessary to the Fifth Circuit's decision in *Netsphere I* and the district court's 2013 and 2015 Fee Orders that were affirmed in *Netsphere III*. With respect to *Netsphere I*, the findings that the receivership was not procured by any conspiracy between the professionals, there was no bad faith, and that Baron's own tactics caused the receivership were critical to the Fifth Circuit's holding that, although the receivership was improper, equity would permit the reasonable fees and expenses of the receivership professionals to be charged against the receivership estate. *See Netsphere I*, 703 F.3d at 313; *see also* 2013 Fee Order, 2013 WL 3327858, at *4-5 (noting that, because "no party 'provoked' the receivership," the typical approach of charging costs to the party who sought the receivership does not apply); 2015 Fee Order, 2015 WL 1400543, at *3-4 (similar).[27]

Moreover, for the district court to award the receiver and his professionals attorneys' fees, it was required, under *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), to determine the reasonableness of the award, make specific findings in support of any award of attorneys' fees, and to consider all circumstances surrounding the receivership, including the receiver's

---

[27] Appellants cite no authority supporting an independent claim for "wrongful appointment of receivership," yet attempted to plead such a claim against the Receiver Defendants. ROA.612-13 (Am. Compl. ¶¶ 78-83). Even if there were such a claim (and the Receiver Defendants respectfully submit that there is not), it could not result in a damage award here, because this Court already decided against charging the Receiver Defendants for the receivership, already found that there was no misconduct in procuring the receiver, and already rejected Appellants' challenges to the Fee Orders.

performance. *SEC v. W.L. Moody & Co., Baners (Unincorporated)*, 374 F. Supp. 465, 480 n.20 (S.D. Tex. 1974). The fee awards in the now-affirmed Fee Orders, coupled with their express findings of no wrongdoing, thus collaterally estop Baron from claiming wrongdoing here.

Finally, the fact that the Receiver Defendants were not awarded the full amount of fees they sought supports, rather than refutes, the collateral estoppel effect of both Fee Orders against the re-urged allegations of wrongdoing and baseless damage claims presented here. *See Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 932-34 (5th Cir. 1999) (partial fee disgorgement order in bankruptcy court collaterally estopped debtor from seeking to recover greater damages in subsequent suit). There simply is no room for Appellants' suit against the Receiver Defendants, because it is barred by this Court's prior rulings in *Netsphere I* and *Netsphere III*.

## III. THIS SUIT WAS PROPERLY DISMISSED BECAUSE IT VIOLATES THE *BARTON* DOCTRINE AND APPELLANTS WAIVED ANY CHALLENGE BY FAILING TO BRIEF IT.

The *Barton* doctrine, derived from *Barton v. Barbour*, 104 U.S. 126, 128 (1881), requires a party to obtain permission from the appointing court before bringing suit against a court-appointed receiver in another forum.[28] "When suit is

---

[28] The *Barton* doctrine applies equally to attorneys – such as Gardere – who are engaged by the receiver to assist in executing his official duties. *See Lawrence v. Goldberg*, 573 F.3d 1265, 1270 (11th Cir. 2009) (holding that court-approved counsel functioned as the equivalent of court-appointed officers by helping the trustee execute his official duties); *Carter v. Rodgers*, 220 F.3d

filed in violation of the *Barton* doctrine, the suit must be dismissed." *In re Coastal Plains, Inc.*, 326 B.R. 102, 111 (Bankr. N.D. Tex. 2005) (dismissing removed action, finding that "because of the Barton Doctrine, the instant case should not have been filed in state court without first seeking this Court's permission"); *Villegas v. Schmidt*, No. 2:13-CV-343, 2014 WL 1356544, at **1-2 (S.D. Tex. Apr. 4, 2014) (plaintiffs who failed to seek leave of bankruptcy court before filing suit in district court violated *Barton*; suit dismissed).

It is undisputed that Appellants did not seek leave of the district court before filing suit against the Receiver Defendants in state court. And Appellants' pleadings establish that they were well aware of the *Barton* doctrine when they filed suit, by repeatedly alleging that the Receiver Defendants' purportedly wrongful conduct was *ultra vires*, one of two very limited exceptions to the *Barton* doctrine. *See* ROA.613-17, 620 (Am. Compl. ¶¶ 82, 91, 95, 99, 104, 110, 127). But the *ultra vires* exception is wholly inapplicable, and this suit presented an ordinary *Barton* violation warranting dismissal.

The district court agreed, expressly holding that "Plaintiffs' claims are barred by the Barton doctrine for the reasons set forth in Defendants' Motion [to dismiss] and reply brief." ROA.799. Appellants failed to brief *Barton* and thus waived any challenge to this ruling, which is dispositive of all of their claims.

---

1249, 1252 n.4 (11th Cir. 2000) (same); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993) (same).

*Procter & Gamble*, 376 F.3d at 499 n.1 (failing to raise a claim or adequately brief it in appellant's brief constitutes waiver); *see also* FED. R. APP. P. 28(a)(8).

### A. The *ultra vires* exception is inapplicable.

The *ultra vires* exception to the *Barton* doctrine[29] is narrow and inapplicable. Courts have only applied the *ultra vires* exception to actions arising from a receiver's wrongful seizure of non-receivership property. *Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*, 716 F.3d 404, 415 (6th Cir. 2013).[30] Regardless, any *ultra vires* arguments were waived when Appellants failed to brief *Barton* in this Court.

In any event, Vogel's control over Baron's personal assets and the assets of NovoPoint and Quantec cannot be *ultra vires*, because it was expressly authorized by the district court. In fact, this Court **already affirmed** the district court's findings that the receivership was operated and conducted in compliance with orders of the district court and this Court, and "in good faith and with an

_____

[29] Under the *ultra vires* exception, a plaintiff may sue a receiver in another forum without first obtaining permission from the appointing court for actions that are beyond the scope of his or her duties. *Kaliner v. Antonoplos (In re DMW Marine, LLC)*, 509 B.R. 497, 506 (Bankr. E.D. Penn. 2014).

[30] The four authorities that Appellants cited in their motion to remand are not to the contrary. In two of the cases, the courts stated the general rule that a receiver or trustee acts outside the scope of her authority in seizing non-receivership or non-estate property, but held that the *ultra vires* exception did not apply. *See Schecter v. State of Illinois, Dep't of Revenue (In re Markos Gurnee P'ship)*, 182 B.R. 211, 217, 224 (Bankr. N.D. Ill. 1995); *In re Weisser Eycare, Inc.*, 245 B.R. 844, 851 (Bankr. N.D. Ill. 2000). And in the other two cases, the receiver or trustee actually lacked approval from the appointing court to seize the non-receivership or non-estate property at issue. *Teton Millwork Sales v. Schlossberg*, 311 Fed. Appx. 145, 147-48 (10th Cir. 2009); *Leonard v. Vrooman*, 383 F.2d 556, 560-61 (9th Cir. 1967).

abundance of care." 2015 Fee Order, 2015 WL 1400543, at *9; 2013 Fee Order, 2013 WL 3327858, at *16. The Receiver Defendants thus did not act *ultra vires*.[31]

Finally, this Court's ruling in *Netsphere I* does not render the Receiver's actions *ultra vires*. In *Ariel Preferred Retail Group, LLC v. CWCapital Asset Mgmt.*, the district court rejected a similar argument. 883 F. Supp. 2d 797, 817-18 (E.D. Mo. 2012). There, as here, the plaintiffs alleged that it was improper for the receivership order to authorize the receiver and his agents to use their intellectual property because the plaintiffs were not parties to the lawsuit. 883 F. Supp. 2d at 818. The district court, however, held that the plaintiffs' suit challenged the receiver's authority, which, under *Barton*, required leave of the appointing court before it could be lodged in another forum. *Id.* ("Essentially, the plaintiffs are contending that the Receivership Order is inherently flawed . . . . This is the very reason that the *Barton* Doctrine was created and has been consistently applied by the federal courts since 1881.").

## B.    The business exception is inapplicable.

The second exception to *Barton* is statutory, codified at 28 U.S.C. § 959(a). It provides: "Trustees, receivers or managers of any property . . . may be sued,

---

[31] *See Estate of Jackson v. Sandnes*, No. 8:13-cv-1133-T-33MAP, 2014 WL 408757, at *4 (M.D. Fla. Feb. 3, 2014) (rejecting plaintiff's contention that the receiver's actions were *ultra vires* where receiver's actions were authorized by the appointing court; the plaintiff's contention that the appointing court "lacked jurisdiction to authorize the Receiver's conduct" did not prevent application of the *Barton* doctrine); *Price v. Deeba*, No. CIV-14-319-D, 2014 WL 4660810, at *4-5 (W.D. Ok. Sept. 17, 2014) (plaintiff's allegations that the trustee's actions were *ultra vires* failed because the court expressly approved them).

without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property."[32] The so-called *Barton* business exception is limited and "applies only to the [receiver]'s ongoing continuous *operation* of the debtor's business." *Blixseth v. Brown*, 470 B.R. 462, 572 (D. Minn. 2012) (emphasis in original). It applies "'only if the . . . officer is actually operating the business, and only to acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise.'" *Id.* (quoting *Med. Dev. Int'l*, 585 F.3d at 1217-18).

"Actions taken in the mere continuous administration of property under order of the court do not constitute an 'act' or 'transaction' in carrying on business connected with the estate." *In re Crown Vantage, Inc.*, 421 F.3d 963, 972 (9th Cir. 2005) (quoting *Muratore v. Darr*, 375 F.3d 140, 147 (1st Cir. 2004)). Rather, § 959 is intended to address ongoing-business situations, such as a slip and fall case against a bankruptcy trustee who operates a retail store. *See Carter v. Rodgers*, 220 F.3d 1249, 1254 (11th Cir. 2000). It does not apply, for example, to breaches of fiduciary duty in the course of estate administration. *See Schafler v. Field*, No. 09-984, 2001 WL 34553964, at *3 (D. Md. Aug. 15, 2001), *aff'd*, 26 Fed. Appx. 315 (4th Cir. 2002). None of Appellants' claims are premised on the operation of

---

[32] *See also Med. Dev. Int'l v. Cal. Dep't Corrs. & Rehab.*, 585 F.3d 1211, 1217-18 (9th Cir. 2009) (citing *Diners Club, Inc. v. Bumb*, 421 F.2d 396, 398-99 (9th Cir. 1970)).

Appellants' businesses. Instead, Appellants complain about the receivership's administration. Accordingly, the *Barton* business exception does not apply.

### C.     Removal did not cure Appellants' *Barton* violation

Because neither exception to *Barton* applied, Appellants' lawsuit was properly dismissed. Removal did not change that result, because it cannot cure the initial, improper filing.[33] As one court explained:

> Trustees [and receivers] should not face personal liability—both the cost of defense and the possibility of judgment—unless the action has been filed in the first instance in the [appointing] court or there has been a determination by the [appointing] court that the action can be initiated elsewhere.

> All problems under the *Barton* doctrine do not vanish when the unauthorized non-[appointing] court action is removed . . . .The [receiver] should not have to expend resources to remove the action to begin with. Nor should the [receiver] have to file a motion to dismiss in the non-[appointing] forum, educating the court about the *Barton* doctrine and hoping for the correct result . . . . Only by requiring any potential plaintiff to always start in the [appointing] court . . . can the process, and [receivers], most consistently be protected.

*Herrera v. Gonzales (In re Herrera)*, 472 B.R. 839, 853-54 (Bankr. D. N.M. 2012) (internal footnotes omitted). Accordingly, this suit properly was dismissed.

---

[33] *See, e.g.*, *In re Coastal Plains, Inc.*, 326 B.R. at 111 (*Barton* doctrine required dismissal of removed claims); *Clark v. Bakst* (*In re Trafford Distributing Center, Inc.*), 520 B.R. 147, 154-56 (Bankr. S.D. Fla. 2014) (dismissing removed case under *Barton*, holding that removal does not cure *Barton* violation); *Heavrin v. Schilling* (*In re Triple S. Rests., Inc.*), 342 B.R. 508, 512 (Bankr. W.D. Ky. 2006) (same), *aff'd*, 519 F.3d 575 (6th Cir. 2008).

## IV.   APPELLANTS' CLAIMS OTHERWISE FAIL.

### A.   Appellants waived any breach of contract claim by failing to defend it in the district court.

Appellants' original breach of contract claim alleged that Ondova bankruptcy trustee Sherman – but not the Receiver Defendants – breached the Global Settlement Agreement (the "GSA"), a contract to which the Receiver Defendants were not even parties. *See* ROA.700 (comparison of pleadings). After dismissing Sherman and his attorneys, Munsch Hardt,[34] Appellants attempted to redirect their breach of contract claim at the Receiver Defendants, claiming that they "conspired" with Sherman and Munsch Hardt to breach the GSA. ROA.618 (Am. Compl. ¶ 113); *see also* Appellants' Br. 4-5).[35]

But Appellants failed to allege any breach of contract elements against the Receiver Defendants, who were not parties to the GSA – instead, such elements were pled only against Sherman and Munsch Hardt, whom Appellants dismissed in the district court. *See* ROA.618-19 (Am. Compl. ¶¶ 112-116).

---

[34] ROA.572 (Notice of Dismissal).

[35] Texas law does not recognize a claim for conspiracy to breach a contract. *See Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 463 (5th Cir. 2003) ("[A] conspiracy to breach a contract is not actionable under Texas law.") (citing *Grizzle v. Texas Commerce Bank, N.A.*, 38 S.W.3d 265, 286 (Tex. App.—Dallas 2001), *rev'd in part on other grounds*, 96 S.W.3d 240 (Tex. 2002)); *see also Grizzle*, 38 S.W.3d at 285 ("Because breach of contract is not a tort, it will not support a civil conspiracy."); *San Saba Energy, L.P. v. McCord*, 167 S.W.3d 67, 73 (Tex. App.—Waco 2005, pet. denied) (citing *Grizzle* and holding that "in Texas a party to a contract may not sue another party to the contract for conspiracy to breach the contract").

When challenged through the motion to dismiss, Appellants failed to defend any breach of contract claim. *See* ROA.709-737; *see also* ROA.750.[36] Any such claim thus was abandoned below and cannot be revived here.[37]

**B.    Appellants' claims properly were dismissed under *Twombly* and *Iqbal*.**

The district court correctly held that Appellants' vague allegations that the Receiver Defendants acted in excess of the powers granted by the Receivership Order are conclusory, noting that they were "not supported by any facts that Defendants were acting outside the scope of Judge Furgeson's receivership orders and the broad authority granted to the receiver." ROA.796-97. Indeed, Appellants' allegations fail to satisfy the *Twombly/Iqbal* standard, because they fail to articulate a set of facts showing entitlement to relief.

Appellants cannot state plausible claims by characterizing the same fees that the district court and this Court already have ruled on as "loot[ing] and squander[ing]." *See, e.g.*, Appellants' Br. at 10, 22; ROA.797. Likewise, Appellants' speculation that the Receiver Defendants conspired with the Ondova trustee to obtain the receivership and acted "presumably to self-justify billing yet

---

[36] *See, e.g., Knowles v. U.S. ex rel. F.B.I.*, No. 4:07-CV-578, 2009 WL 2882956, at *8 (E.D. Tex. Aug. 31, 2009) (holding that failure to defend a claim in response to a motion to dismiss is abandonment and results in dismissal) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)); *U.S. ex rel. Phillips v. L-3 Commc'ns Integrated, Sys. L.P.*, No. 3:10-CV-1784, 2012 WL 3649699, at *9 (N.D. Tex. Aug. 24, 2012) (same).

[37] Inexplicably, Appellants list breach of contract among the claims that they argue were dismissed erroneously. Appellants' Br. 21-22.

more money," *id*. at 9-13 & 22, neglects even to mention this Court's rulings affirming the Fee Orders and finding no malice or wrongful conduct in obtaining the receivership. Suggesting that Vogel "confiscated all of Baron's possessions" and complaining that NovoPoint and Quantec were made part of the receivership estate does not change the fact that the Receivership Order expressly authorized the receiver to "take exclusive custody, control, and possession of all assets and documents of . . . the Receivership Part[ies], which included Baron and these entities. *See id*. at 12, 16-17, 22; *see also* Receivership Order at 1-2, 6.

Appellants' lengthy discussion of *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298 (9th Cir. 1989) is unpersuasive because that case denied a receiver's immunity arguments based on two sets of circumstances that do not apply here: (1) alleged retention of assets after a divorce decree had become final without authorization by the appointing court, and (2) alleged pilfering from, and slander of, the parties placed in receivership. *See id*. at 1304.[38]

First, Appellants do not allege that the Receiver Defendants retained assets without Court authorization; instead, they complain that there **was** Court authorization to retain assets when there allegedly should not have been. *See, e.g.*, ROA.602 (Am. Compl. ¶¶ 53-55). Second, Appellants' allegations pitched as

---

[38] The Receiver Defendants respectfully note that *New Alaska*'s discussion of receiver's immunity is *dicta*, because the Ninth Circuit ultimately affirmed judgment in the receiver's favor – even on the theft and slander allegations – on grounds other than immunity. *See id*. at 1305.

misappropriation or pilfering simply place nefarious labels on conduct that the Receivership Order and Fee Orders authorized (taking dominion of and managing property, defending the receivership, and charging fees). *See, e.g.,* ROA.605-06, 608-10 (Am. Compl. at ¶¶ 61, 67-70); Receivership Order at 1-2, 5-8; 2013 Fee Order, 2013 WL 3327858, at *5, 15-22; 2015 Fee Order, 2015 WL 1400543, at *9. Finally, Appellants' allegations pitched as slander all are conclusory and thus are not entitled to an assumption of truth. *See* Appellants' Br. 27-28; ROA.601, 606, 615 (Am. Compl. ¶¶ 49, 62(h), 97).[39]

Ultimately, Appellants' hyperbole and adjectives cannot change the fact that they are suing a court-appointed receiver and his law firm for activities they performed under an order of the United States District Court. These claims are implausible, especially in light of this Court's *Netsphere I* and *III* decisions and the Fee Orders that this Court affirmed. Accordingly, they were properly dismissed.

## PRAYER

Appellees respectfully request that the Court affirm the dismissal of all claims with prejudice, and award Appellees their court costs. FED. R. APP. P. 39.

---

[39] Appellants omit any discussion of *New Alaska*'s broader statements with respect to the receivership, including the court's statement that "appellants allegations that [the receiver's] fees were unjustified and that his management of New Alaska's assets was negligent are matters that [the individual appellant-plaintiff] should have pursued . . . . before the judge who appointed the receiver" and not "in a collateral proceeding." *See* 869 F.2d at 1304. So too here, as Judge Lindsay found. *See* ROA.798. Of course, as shown extensively above, Baron's complaints about the receivership *were* brought to the appointing Court's attention in the litigation over the Fee Orders, which the district court entered and this Court already affirmed.

Respectfully submitted,

*/s/ George M. Kryder*
George M. Kryder
Jordan W. Leu
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Tel:   214.220.7719
Fax:   214.999.7719

gkryder@velaw.com
jleu@velaw.com

*Attorneys for Peter S. Vogel and Gardere Wynne Sewell LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2016, I electronically transmitted the attached document to the Clerk of the Court of the 5th Circuit Court of Appeals using the ECF System of the Court.  The electronic case filing system will send a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ George M. Kryder*
George M. Kryder

## ECF CERTIFICATION

I certify that a paper copy of this document will be maintained for three years after the mandate or order closing the case issues, pursuant to 5TH CIR. R. 25.2.9.

/s/ George M. Kryder
George M. Kryder

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because:

■       this brief contains 9,313 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

■       this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.

/s/ George M. Kryder
George M. Kryder

US 4647328