# RECORD NO. 16-10556

In The
# United States Court of Appeals
For The Fifth Circuit

## JEFFREY BARON; QUANTEC, L.L.C.; NOVOPOINT, L.L.C.,

*Plaintiffs – Appellants,*

## v.

## PETER S. VOGEL; GARDERE WYNNE SEWELL, L.L.P.,

*Defendant – Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS

_____

## REPLY BRIEF OF APPELLANTS

_____

Leonard H. Simon
PENDERGRAFT & SIMON, L.L.P.
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 528-8555

*Counsel for Appellants*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Record No. 16-10556

JEFFREY BARON; QUANTEC, L.L.C.; NOVOPOINT, L.L.C.,

*Plaintiffs – Appellants*,

v.

PETER S. VOGEL; GARDERE WYNNE SEWELL, L.L.P.,

*Defendant – Appellees.*

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Appellants:**

Jeffrey Baron

Novo Point, LLC

Quantec, LLC

**Appellants' Counsel:**

Leonard H. Simon

Pendergraft & Simon, LLP

**Appellees:**

Peter Vogel

Gardere Wynn Sewell, LLP

**Appellees' Counsel:**

George M. Kryder, III

Vinson & Elkins, LLP

<u>s/Leonard H. Simon</u>

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................i

TABLE OF CONTENTS .......................................................................... iii

TABLE OF AUTHORITIES ........................................................................v

INTRODUCTION ...................................................................................1

ARGUMENT .........................................................................................1

    I.    Appellees' waiver arguments fail........................................................1

    II.   The *Barton* Doctrine is properly before this Court for resolution on the merits and does not bar this lawsuit ...........................................3

        A.    The *Barton* Doctrine is properly before this Court for resolution on the merits...............................................3

        B.    The single-sentence footnote in the district court's order "holding" that the *Barton* doctrine bars this lawsuit is an abuse of discretion ...................................................9

        C.    The *Barton* doctrine does not apply...........................................9

    III.   Arguments regarding the release in the Fee Orders are properly before this Court, and that language does not bar this suit .................12

        A.    The waiver rule does not preclude Appellants from contesting the purported applicability of the release to this case...................................................................12

        B.    The release does not apply to bar this lawsuit ..........................13

IV.    Arguments concerning the applicability of preclusion principles to this lawsuit are properly before this Court, and those principles plainly do not bar this case .................................................15

    A.    The waiver rule does not preclude Appellants from contesting the applicability of preclusion principles to this lawsuit .................................................................15

    B.    The district court cannot decide preclusion defenses at the 12(b)(6) stage ......................................................16

    C.    Preclusion principles do not bar this lawsuit ...........................17

        1.    An issue raised in Appellees' Brief demonstrates that the Fee Orders cannot form the basis of a preclusion argument ......................................................17

        2.    Many of the findings upon which Appellees rely are invalid ........................................................18

        3.    There was no full and fair opportunity to litigate the issues........................................................19

        4.    Statements made by this Court in *Netsphere I* cannot form the basis of a preclusion arugment.............23

        5.    Appellees' reliance on *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925 is misplaced...........24

V.    Appellees are not entitled to immunity for the claims alleged in the Amended Complaint.....................................................25

    A.    The allegations of the Amended Complaint take this case outside the scope of derived judicial immunity .......................25

    B.    Attorney immunity does not bar this lawsuit...........................27

CONCLUSION ........................................................................................................28

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.J. Taft Coal Co. v. Connors*,
829 F.2d 1577 (11th Cir. 1987) ....................................................20

*Amberg v. Federal Deposit Ins. Corp.*,
934 F.2d 681 (5th Cir. 1991) ....................................................1, 8

*American Standard Credit, Inc. v. National Cement Co.*,
643 F.2d 248 (5th Cir. 1981) ........................................................23

*Avia Dynamics, Inc. v. Fed. Aviation Admin.*,
641 F.3d 515 (D.C. Cir. 2011)........................................................7

*Avondale Shipyards, Inc. v. Insured Lloyd's*,
786 F.2d 1265 (5th Cir. 1986) ......................................................18

*Bath Iron Works Corp. v. Coulombe*,
888 F.2d 179 (1st Cir. 1989)..........................................................23

*Byrd v. Blue Ridge Rural Electrical Cooperative*,
356 U.S. 525 (1958)........................................................................23

*Cantey Hanger, LLP v. Byrd*,
467 S.W.3d 477 (Tex. 2015) ..................................................27, 28

*Carroll v. Abide*,
788 F.3d 502 (5th Cir. 2015) ..........................................................9

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ........................................................25

*Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*,
723 F.2d 357 (3d Cir. 1983) ..........................................................20

*Copeland, et al. v. Merrill Lynch & Co., et al.*,
   47 F.3d 1415 (5th Cir. 1995) ...................................................................22

*Cousin v. Trans Union Corporation*,
   246 F.3d 359 (5th Cir. 2001) .........................................................3, 13, 16

*Davis v. Bayless*,
   70 F.3d 367 (5th Cir. 1995) .....................................................................25

*Gen. Elec. Co. v. Jackson*,
   610 F.3d 110 (D.C. Cir. 2010)....................................................................6

*General Universal Sys., Inc. v. Hal, Inc.*,
   500 F.3d 444 (5th Cir. 2007) ....................................................................14

*Hughes v. Santa Fe Int'l. Corp.*,
   847 F.2d 239 (5th Cir. 1988) ....................................................................19

*In re Gold Res. Corp.*,
   776 F.3d 1103 (10th Cir. 2015) ..................................................................6

*In re Harris*,
   464 F.3d 263 (2d Cir. 2006) .......................................................................6

*In re Lloyd's Register N. Am., Inc.*,
   780 F.3d 283 (5th Cir. 2015) ........................................................1, 2, 9, 28

*In re McKenzie*,
   716 F.3d 404 (6th Cir. 2013) ....................................................................10

*International Union of Operating Engineers, Local No. 714 v.
Sullivan Transfer, Inc.*,
   650 F.2d 669 (5th Cir. 1981) ....................................................................18

*Latham v. Wells Fargo Bank N.A.*,
   896 F.2d 979 (5th Cir. 1990) ....................................................................18

*Leonard v. Vrooman*,
   383 F.2d 556 (9th Cir. 1967) ....................................................................10

*Lopez-Vences v. Payne*,
    74 F. App'x 398, 2003 WL 22047325 (5th Cir. 2003) ..................................4

*Medina v. Ortiz*,
    623 F. App'x 695, 2015 WL 5004611 (5th Cir. 2015) ............................5, 8

*Muratore v. Darr*,
    375 F.3d 140 (1st Cir. 2004)..........................................................................11

*Netsphere v. Baron*,
    703 F.3d 296 (5th Cir. 2012) ...............................................................*passim*

*New Alaska Development Corp. v. Guetschow*,
    869 F.2d 1298 (9th Cir. 1989)...............................................................26, 27

*Preferred Communications, Inc. v. Los Angeles*,
    17 F.3d 395 (9th Cir. 1994) ........................................................................16

*Pullman-Standard v. Swint*,
    456 U.S. 273 (1982)....................................................................................23

*SEC v. W.L. Moody & Co., Baners (Unincorporated)*,
    374 F. Supp. 465 (S.D. Tex. 1974)...............................................................22

*Simmons v. Sabine River Auth. State*,
    732 F.3d 469 (5th Cir. 2013) ........................................................................15

*Southmark Corp. v. Coopers & Lybrand*,
    163 F.3d 925 (5th Cir. 1999) .......................................................................24

*Test Masters Educational Services, Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) .......................................................................17

*Teton Millwork Sales v. Schlossberg*,
    311 F.App'x 145, 2009 WL 323141 (10th Cir. Feb. 10, 2009) ....................10

*United States v. Bohn*,
    956 F.2d 208 (9th Cir. 1992) ........................................................................6

*United States v. Cisneros*,
    491 F.2d 1068 (5th Cir. 1974) ......................................................23

*United States v. Narez-Garcia*,
    819 F.3d 146 (5th Cir. 2016) ..........................................................4

*United States v. Ramirez*,
    557 F.3d 200 (5th Cir. 2009) ...............................................*passim*

*United States v. Rodriguez*,
    602 F.3d 346 (5th Cir. 2010) ...............................................*passim*

*Warnock v. Pecos County, Tex.*,
    116 F.3d 776 (5th Cir. 1997) ......................................................28

## **STATUTE**

28 U.S.C. § 959 .................................................................................11

## **RULES**

Fed. R. App. P. 32.1(a) ...................................................................5, 6

Fed. R. Civ. P. 12(b)(6) .................................................................16, 17

5th Cir. R. 47.5.4 ..............................................................................5

## INTRODUCTION

As this Court has so forcefully stated "[t]he Federal Rules are diametrically opposed to a tyranny of technicality and endeavor to decide cases on the merits." *Amberg v. Federal Deposit Ins. Corp.*, 934 F.2d 681, 686 (5th Cir. 1991). Yet Appellees' Brief attempts repeatedly to leverage the tyranny of technicality to their advantage. And this despite the fact that case law from this Court specifically forecloses the hyper-technical tactical maneuvers Appellees seek to employ. Thus, not only is the general spirit of the Federal Rules "diametrically opposed" to Appellees' technical arguments, this Court's cases are also "diametrically opposed" to them. Appellees' arguments fare no better on the merits.

## ARGUMENT

### I.    Appellees' waiver arguments fail.

Appellees' waiver arguments fail. The district court Order contains one, and only one, reviewable holding, namely the holding on judicial immunity. Appellants fully addressed that issue in their initial brief. The purported alternative holdings in the Order are insufficient as a matter of law. *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015) (district court abuses its discretion in failing to explain its ruling). When a district court does not explain its rulings, the parties and this Court are left to "guess the basis for the decision without guidance," – a result this Court found so unacceptable in *Lloyd's Register* that it

1

characterized the situation as a "clear abuse of discretion." *Id.* at 290-91. When a district court purports to make rulings "without explanation and without any visible [legal analysis, that] takes the decision entirely outside the scope of judicial discretion, giving the parties and reviewing courts no way of understanding how the court reached its conclusion and providing no assurance that it was the result of conscientious legal analysis." *Id.* at 291. Furthermore, "[a]n explanation must be generated by the court, not inferred by the appellate court from the submissions of the parties." *Id.*

Appellants cannot be faulted for not attempting to ferret out the meaning of, and then challenge, such patently insufficient conclusory statements. Appellees' waiver arguments would require Appellants to do precisely what this Court has said parties have no obligation to do – accurately "guess" the meaning of those holdings. *Id.* As the discussion of the district court's cryptic "impermissible collateral attack" statement, *infra*, amply demonstrates, that concern is far more than theoretical in this case. Appellants challenged the sufficiency of the purported alternative holdings in their initial brief, and Appellees did not attempt to refute the argument.

Appellees' Brief does not suggest (nor could it) that Appellants waived their ability to challenge the merits of the judicial immunity holding – the one and only adequate holding in the district court's order. To the extent Appellees' Brief

argues that Appellants waived the ability to argue issues other than immunity, that

argument necessarily fails for the reasons stated above, as well as those that follow.

**II.    The *Barton* Doctrine is properly before this Court for resolution on the merits and does not bar this lawsuit.**

    **A.    The *Barton* Doctrine is properly before this Court for resolution on the merits.**

Appellees wrongly posit that arguments regarding the applicability of the

*Barton* doctrine have been waived and may not be considered.  This Court has

repeatedly made clear that the "waiver rule" does not apply where the appellee

raises an issue and addresses the merits, as there is no prejudice under those

circumstances:

> This court [generally] does not entertain arguments raised for the first time in a reply brief.  However, this court views the situation differently when a new issue is raised in the appellee's brief and the appellant responds in his reply brief.  In that situation, the court avoids the more unfair scenario that occurs when "an appellant raises a completely new issue in its reply brief, disadvantaging the appellee, and for which the procedural bar concerning initial briefs was properly developed and utilized."  This situation is not present in this case because the government raised the issue presented by *Rojas-Luna* eliminating any surprise.

*U.S. v. Ramirez*, 557 F.3d 200, 203 (5th Cir., 2009) (internal citations omitted); *see*

*also Cousin v. Trans Union Corporation*, 246 F.3d 359, 373 n.22 (5th Cir. 2001)

(refusing to find waiver where "unlike the more contemptible situation where an

appellant raises a completely new issue in its reply brief, disadvantaging the

appellee, … we see no real new issue in the reply brief, but rather responsive

arguments to the appellee's own contentions, and, therefore, little or no prejudice."); *Lopez-Vences v. Payne*, 74 F. App'x 398, 2003 WL 22047325 *1 (5th Cir. 2003) ("We do not consider arguments raised for the first time in Lopez's reply brief *which are not responsive to the appellee's brief.*" (emphasis added)). Or as stated most recently, "[t]his Court generally does not consider arguments raised for the first time in a reply brief, but we will review an argument that is made in response to an issue raised by appellee in its brief." *United States v. Narez-Garcia*, 819 F.3d 146, 150 n.3 (5th Cir. 2016).

In *United States v. Rodriguez*, 602 F.3d 346 (5th Cir. 2010), this Court applied this firmly established exception to the waiver rule, emphasizing the complete absence of prejudice when the appellee briefs an issue. Rodriguez had successfully appealed a prior sentence. After resentencing, he again appealed, arguing that the new sentence was vindictive. *Id.* at 349. Rodriguez did not argue "actual vindictiveness" in his opening brief (or at any prior point in the proceedings for that matter). Nonetheless, the Government's response brief asserted that "Rodriguez has not shown any actual vindictiveness." *Id.* at 361. That statement was enough. Quoting *Ramirez*, this Court set out the controlling factor: "Considering this assertion [from the Government's Brief that Rodriguez has not shown any actual vindictiveness], there is no prejudice to the Government" in "consider[ing] Rodriguez' quite belated actual-vindictiveness claim." *Id.*

4

In an even more recent civil case, this Court, citing *Rodriguez*, made clear that an appellee cannot simultaneously brief the merits of an issue and claim waiver with respect to that issue. In *Medina v. Ortiz*, 623 F. App'x 695, 2015 WL 5004611 (5th Cir. 2015), the appellant did not address an issue in the initial brief. In response, appellee argued *only* that the issue was waived, and did not address the merits of the issue. Under those circumstances, this Court applied the waiver rule and explained:

> Whereas the appellee in *Rodriguez* addressed the substantive issue in its opening brief, in this case the Defendants asserted **only** that the Rule 41(b) issue had been waived. Compare 602 F.3d at 361 (emphasizing the absence of prejudice to the appellee because it had already briefed the otherwise late raised issue).

> *Id.* at 699, n.1 (emphasis added).

Thus, had the *Medina* appellee argued not *only* waiver but also the merits, the waiver rule would not apply. *Id.* It actually cannot apply under those circumstances. The purpose of the waiver rule is to protect the appellee's ability to address the merits. Once the appellee addresses the merits, there is, by definition, no disadvantage to appellee and thus no waiver. *See Ramirez* 557 F.3d at 203 (preventing disadvantage to the appellee is why the waiver rule was "properly developed" and guides when it is "properly … utilized"). [1]

---

[1] Appellants are aware that unpublished opinions are not precedent. 5th Cir. R. 47.5.4. Nonetheless, Appellants discuss the case for its persuasive value, as the discussion was too on point to ignore. FRAP 32.1(a); 2006 Adv. Comm.

In short, the waiver rule was not developed to encourage or facilitate technical gamesmanship, and the rule is not applied that way. *Id.* It safeguards one legitimate interest: ensuring that the appellee has an opportunity to brief the merits of each issue being presented to the Court. *Id.* When the rule will further this objective, it gets applied; when it will not further the objective, courts routinely and universally hold it inapplicable. *Id; see also In re Harris*, 464 F.3d 263, 268 n.3 (2d Cir. 2006) (purpose of waiver doctrine is that "if an appellant raises a new argument in a reply brief an appellee may not have an adequate opportunity to respond to it."); *U.S. v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (waiver rule does not apply where "the appellee raised the issue in its brief."); *In re Gold Res. Corp.*, 776 F.3d 1103, 1119 (10th Cir. 2015) (court "make[s] an exception" to the waiver rule "when the new issue argued in the reply brief is offered in response to an argument raised in the [plaintiff's] brief.'"); *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 123 (D.C. Cir. 2010) (purpose of waiver rule is to prevent "sandbagging" and ensure appellee has an opportunity to address the issue).

Appellants certainly were not attempting to sandbag the *Barton* doctrine issue, nor could they have done so. Both parties briefed the *Barton* doctrine in the district court, so Appellees were on notice that Appellants opposed application of

comments to FRAP 32.1(a) (parties may cite unpublished opinions "for their persuasive value").

the *Barton* doctrine and were specifically apprised of Appellants' arguments against application of the doctrine. *Avia Dynamics, Inc. v. Fed. Aviation Admin.*, 641 F.3d 515, 521 (D.C. Cir. 2011) (although arguments raised for the first time in a reply brief are generally not considered, respondent was on notice of the argument from prior motions and responded to the argument in its brief). The fact that Appellants did not address the issue in their initial brief was, in all candor, an oversight that resulted from the fact that the *Barton* doctrine statement was contained in a single-sentence footnote to the Conclusion of the Order. While Appellants certainly take responsibility for the oversight, Appellants submit that it is proper to take into account the context of the footnote. Not only was the statement about the *Barton* doctrine contained in a single-sentence footnote, it was a footnote to the Order's Conclusion, not the Analysis section, even though the latter section contained a paragraph that purported to set out alternative rulings. Moreover, the parties fully briefed the issue in the district court. Nothing but innocent oversight can explain why Appellants' initial brief did not address the issue. And, most critically, Appellants' innocent oversight did not prejudice Appellees in the least; they fully briefed the issue, and actually went to fairly remarkable lengths to do so, addressing not only the arguments Appellants made in opposition to the Motion to Dismiss in the district court, but also seeking out and

distinguishing authorities Appellants had cited in support of their Motion to Remand.  Appellees' Brief, p. 27 n.30.

Moreover, the *Barton* doctrine has now been fully briefed by both parties.  It is a complete misuse of the waiver doctrine for a party to address the merits of an issue, and then attempt to gain additional leverage based upon a supposed waiver. *See Medina*, *supra*.  Addressing the merits of an issue necessarily negates any suggestion that Appellees were prejudiced in their ability to address the merits.  *Id*. Appellees would take a reasonable rule that has consistently received practical application according to its purpose, completely dislodge it from its foundation, and convert it into an unyielding tool of tyranny that blindly obstructs courts from considering arguments on their merits.  The waiver rule, properly understood, does not permit such a perverse result.   It is surely no coincidence that proper application of the waiver rule accords perfectly with the general policy and spirit undergirding the entirety of the Federal Rules to "endeavor to decide cases on the merits." *Amberg*, 934 F.2d at 686.  Under a wealth of authorities from this Court and others, when both sides have had their say on the merits, hyper-technical waiver arguments have no place.

**B.    The single-sentence footnote in the district court's order "holding" that the *Barton* doctrine bars this lawsuit is an abuse of discretion.**

The district court's single-sentence footnote in its Conclusion that Plaintiffs' claims are barred by the *Barton* doctrine for the reasons given in Defendants' pleadings constitutes a clear abuse of discretion.  *Lloyd's Register*, 780 F.3d at 290 ("An explanation must be generated by the court, not inferred by the appellate court from the submissions of the parties."); s*ee* Section I, *supra*.  That "holding" cannot stand.

**C.    The *Barton* doctrine does not apply.**

The *Barton* doctrine does not apply to this case for a few reasons.  First, to address an argument raised in Appellees' Brief, the fact that the case was removed to the Northern District of Texas does in fact completely vitiate the potential applicability of the *Barton* doctrine.  Appellees' Brief, p. 30 (arguing that removal did not cure the alleged violation).  Vogel was carrying out subsequently vacated orders of that same district court when he illegally and wrongfully seized the subject assets.  As this Court said in *Carroll v. Abide*, 788 F.3d 502 (5th Cir. 2015), "because the [plaintiffs] complain of [defendant's] conduct while carrying out district court orders, we conclude that the plaintiffs were not required to seek permission from the bankruptcy court before filing suit in the district court regarding the challenged conduct."  *Id.* at 505.

Furthermore, where a receiver generally acts outside the scope of his authority, a litigant does not need to seek approval from the authorizing court prior to instituting a suit against the receiver. *See In re McKenzie*, 716 F.3d 404, 414 (6th Cir. 2013). This exception most commonly occurs when a trustee has wrongfully seized assets from a third party. *See Teton Millwork Sales v. Schlossberg*, 311 F.App'x 145, 2009 WL 323141, at *2 (10th Cir. Feb. 10, 2009) (finding case fell "squarely within [the] *ultra vires* exception to the *Barton* doctrine" because plaintiff, an outside party, alleged that receiver exceeded his authority by wrongfully seizing its assets); *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967) ("It follows . . . that a trustee wrongfully possessing property which is not an asset of the estate may be sued for damages arising out of his illegal occupation in a state court without leave of his appointing court."). That is precisely what happened here. The Receiver seized Novo Point and Quantec's assets, as well as Baron's own personal assets. This Court held that there was no jurisdiction to do so because Novo Point and Quantec were not parties to the proceeding and the district court thus lacked jurisdiction over the companies and their assets. *Netsphere v. Baron*, 703 F.3d 296, 305-11 (5th Cir. 2012) ("*Netsphere I*"). In other words, the companies were third parties and had their assets wrongfully seized – the precise situation contemplated by this exception to the *Barton* doctrine. The *ultra vires* exception described in *Barton* is not limited,

however, to wrongful possession or any other distinct category of *ultra vires* acts. The Amended Complaint makes plain that Appellees committed many *ultra vires* acts, and therefore the *Barton* doctrine does not apply.

In addition to the *ultra vires* exception, 28 U.S.C. § 959 (the codification of an exception to the *Barton* doctrine) permits lawsuits for wrongs in carrying on the business of the subject company.  The phrase "carrying on business" applies to "acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise." *Muratore v. Darr* 375 F.3d 140, 144 (1st Cir. 2004) (citing cases). Appellees operated the day-to-day business of Quantec and Novo Point, and were paid millions of dollars for doing so. Even a cursory review of the facts alleged in the Amended Complaint reveals that the Appellants' claims are based on Appellees' operation of Appellants' business. For example, the Amended Complaint charges Appellees with "failure to pay renewal fees", "Failure to defend over 500 trademark disputes of Quantec and Novo Point", "Engaging in wrongful tortious activities designed to encourage employees of Novo Point and Quantec to breach their fiduciary duties to NovoPoint and Quantec, "intentional tortious management actions and reckless management of the LLCs".

For all of these reasons, the *Barton* doctrine does not bar this lawsuit.

**III.  Arguments regarding the release in the Fee Orders are properly before this Court, and that language does not bar this suit.**

    **A.  The waiver rule does not preclude Appellants from contesting the purported applicability of the release to this case.**

Appellees suggest that arguments as to the alleged applicability of a release contained in a prior fee order are waived.  That argument fails for several reasons.  First, the district court's order did not rule on the Appellees' release argument.  While the district court did make a statement about the current lawsuit amounting to an "impermissible collateral attack," that statement is contained in a single sentence with no explanation.  The phrase "impermissible collateral attack" is identical to the term used in the heading to the section of Appellees' Motion to Dismiss that addressed res judicata and collateral estoppel, not release.  Appellees' release argument is contained in a different and preceding section of the Motion.  *Cf.* ROA.643 (section I.A., "[t]he Court released the Vogel Defendants for anything other than gross negligence, which did not occur here") *with* ROA.644 (section I.B., "Plaintiffs' claims are an *impermissible collateral attack* and are barred by collateral estoppel and res judicata").  Thus, the district court's statement cannot be understood to have addressed the release argument.  Appellants have no obligation to challenge rulings that were never made.

To the extent Appellees may suggest that the district court intended the "impermissible collateral attack" statement to refer to the release argument,

Appellees' waiver argument fails for at least two more reasons.  First, Appellants argued in their initial brief that the single-sentence comment about "impermissible collateral attack" was insufficient to constitute a reviewable holding and constituted a clear abuse of discretion.  *See* Appellants' Brief, pp. 35-36.  Appellees did not respond to this argument in their brief and have thus conceded that the statement is inadequate and constitutes an abuse of discretion.

Additionally, even if all of the foregoing were not true, Appellees argued in their brief that the release is valid and bars Appellants' claims.  Appellees' Brief, p. 16 (quoting the release from the 2015 Fee Order and arguing based on its language that since the Receivership has terminated "the release is in full effect").  Thus, the validity and applicability of the release is properly presented for determination.  In that event, Appellants' response herein does not constitute a "real new issue in the reply brief, but rather responsive arguments to the appellee's own contentions," which is unquestionably proper.  *Cousin*, 246 F.3d at n.22; *Ramirez*, 557 F.3d at 203; *Rodriguez*, 602 F.3d at 361.

### B.  The release does not apply to bar this lawsuit.

*Netsphere I* renders the release invalid.  There, this Court held that the district court lacked jurisdiction to establish the subject receivership.  Accordingly, this Court directed the district court to "vacate the receivership and discharge the receiver, his attorneys and employees, and to charge against the cash in the

13

receivership fund the remaining receivership fees in accordance with this opinion." *Netsphere I*, 703 F.3d at 315.  On remand, the district court could do nothing more. *General Universal Sys., Inc. v. Hal, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007) (citations omitted) ("The mandate rule requires a district court on remand to effect our mandate and to do nothing else.").  Nothing about this Court's directive permitted the district court to grant anyone a release – a point underscored by the fact that the vacated receivership order contained a limitation of liability clause purporting to release the receiver.  (Dkt. 124 in case 3:09-cv-988, pp. 8-9).[2]  The release is thus invalid under the mandate rule.  Moreover, granting a release to receivership parties where the court lacked subject matter jurisdiction to establish the receivership is unprecedented, and the order purporting to grant the release was void for lack of subject matter jurisdiction in addition to being foreclosed by the mandate rule.

And even if the release were determined to be valid, it does not apply to willful misconduct or gross negligence, both of which are adequately alleged in the Amended Complaint.  *See Netsphere III*, 2016 WL 3667573, at *4; 2015 Fee Order, 2015 WL 1400543, at *10.  The balance of Appellees' arguments about the release are based on alleged issue preclusion.  Those arguments fail for the reasons stated in the following section.

---

[2] Unless otherwise noted, docket references (Dkt.) are to case 3:09-cv-988 in the Northern District of Texas.

**IV.    Arguments concerning the applicability of preclusion principles to this lawsuit are properly before this Court, and those principles plainly do not bar this case.**

     **A.    The waiver rule does not preclude Appellants from contesting the applicability of preclusion principles to this lawsuit.**

Appellees suggest that arguments opposing their collateral estoppel defense have been waived because the district court struck Appellants' substantive brief on that issue as untimely. Once again, Appellees' effort to leverage the procedural rules to preclude a consideration of the merits of this issue is misplaced. The general rule that this Court does not consider arguments not presented below, does not take account of scenarios like the one in this case, where the Appellees raised an issue in the district court, procured an order by which the district court at least appears to have attempted to rule on the issue (*i.e.*, the "impermissible collateral attack" statement), and then continued to press the merits of the issue in support of the order during the appeal, all of which Appellees have done with respect to collateral estoppel.

As demonstrated by *Rodriguez*, this situation is governed by the authorities discussed herein, that say if the appellee raises an issue, the appellant may respond. It is well-known that this Court "may affirm the district court's judgment for any reason supported by the record." *Simmons v. Sabine River Auth. State*, 732 F.3d 469, 474 (5th. Cir. 2013). Appellees surely cannot be allowed to argue the merits of alternative sustaining grounds without the appellees being able to respond. That

would work incredible, unjustifiable, and legally unsupported prejudice against Appellants.

In short, Appellees' Brief argues the merits of collateral estoppel in support of the district court's order. Appellants can respond accordingly. *Ramirez*, 557 F.3d at 203; *Cousin*, 246 F.3d at n.22; *Rodriguez*, 602 F.3d at 361. This principle applies even with respect to arguments that Appellants did not make below. *See Rodriguez*, 602 F.3d at 361 (Rodriguez can argue actual vindictiveness in his reply brief, even though he had never raised it at any prior point in the proceedings, because the Government raised the issue in its brief); *see also Preferred Communications, Inc. v. Los Angeles*, 17 F.3d 395 n.1 (9th Cir. 1994) (appellant did not argue issue in the district court but appellee waived objection to the argument being considered on appeal because of appellees' own arguments). Thus, the issue is properly before this Court.

## B.    The district court cannot decide preclusion defenses at the 12(b)(6) stage.[3]

Appellants argued below that preclusion defenses cannot be decided at the 12(b)(6) stage unless Plaintiffs/Appellants consent. ROA.734. Appellees argued to the contrary and do so again in their brief to this Court. Appellees' Brief, p. 9. But this Court has established that: "[G]enerally a res judicata contention cannot be

---

[3] Appellees concede that Appellants timely briefed this particular issue in the district court. Appellees' Brief, p. 20.

16

brought in a motion to dismiss; it must be pleaded as an affirmative defense." *Test*

*Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005).

After setting forth that general rule in *Test Masters*, this Court observed that:

> [Plaintiff] did not challenge [defendant's] ability to argue res judicata
> in a motion to dismiss rather than in their response or a motion for
> summary judgment.

*Id.* "Therefore, we review the district court's dismissal of Singh's claims under the

12(b)(6) standard." *Id.* In other words, *Test Masters* plainly establishes that,

where a plaintiff challenges the ability of the district court to decide a preclusion

defense at the 12(b)(6) stage, resolution must await summary judgment. Thus, to

the extent that any part of the district court's order is deemed to have ruled on

Appellees' collateral estoppel defense, the court committed reversible error.

### C.    Preclusion principles do not bar this lawsuit.

#### 1.    An issue raised in Appellees' Brief demonstrates that the Fee Orders cannot form the basis of a preclusion argument.

In arguing that the instant case is barred by preclusion principles, Appellees'

Brief raises an issue that requires a response. Specifically, Appellees expressly

abandon their *res judicata* argument based on the 2013 and 2015 Fee Orders in

light of certain rulings from this Court that those Orders are not "final orders."

Appellees' Brief, p. 20, n. 24. While Appellants certainly appreciate Appellees'

candor in that regard, Appellees should likewise have abandoned any effort to

argue collateral estoppel based on those Fee Orders. While other Circuits have

adopted a more lenient attitude toward the finality requirement for collateral estoppel purposes, this Court has not.  In this Circuit, "collateral estoppel requires no less finality than does res judicata." *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265 (5th Cir. 1986); *International Union of Operating Engineers, Local No. 714 v. Sullivan Transfer, Inc.*, 650 F.2d 669, 676 (5th Cir. 1981) ("The requirement of finality applies just as strongly to collateral estoppel as it does to res judicata.")

## 2.    Many of the findings upon which Appellees rely are invalid.

Aside from the issues discussed above, Appellees' collateral estoppel arguments fail for several reasons.  First, the "findings" relied on by Appellees are invalid and thus insufficient to support a preclusion defense.  Pursuant to the holdings and mandate of *Netsphere I*, the District Court had no authority or jurisdiction to determine any of Plaintiffs' claims, including those of breach of duty, fraud and gross negligence --claims which were all owned by the receivership estate until sometime during the first quarter of 2014**,** when the District Court in the *Netsphere* Case ordered Plaintiffs' assets returned. *Latham v. Wells Fargo Bank N.A.*, 896 F.2d 979 (5th Cir. 1990) (rejecting preclusive effect of a bankruptcy court's edict because the claims adjudicated in the edict were outside of the jurisdiction of the bankruptcy court).  In the instant case, Plaintiffs seek money damages against Defendants, which were beyond the jurisdiction of the

District Court in *Netsphere*. With no jurisdiction over the entities or the assets in the receivership, the court had no jurisdiction to adjudicate claims involving loss or diminution in value of such property, or tort claims against the Receiver and his attorneys for engaging in acts that led to the loss or diminution in value.

### 3.     There was no full and fair opportunity to litigate the issues.

Second, there was no full and fair opportunity to litigate the issues previously. *Hughes v. Santa Fe Int'l. Corp*. 847 F.2d 239, 241 (5th Cir. 1988) (for preclusion to apply the party to be estopped must have had a "full and fair opportunity to litigate" the issue). Appellants' initial brief set out in great detail the gross disadvantage Baron faced during the relevant proceedings, all while defending himself in an involuntary bankruptcy proceeding brought against him by several receivership related law firms, supported by a Chapter 7 trustee and his law firm. Baron was quite literally on complete financial lockdown during the relevant proceedings and Novo Point and Quantec were not permitted to participate at all.

And that is not all. The Orders upon which Appellees rely were the product of proceedings where there was no hearing, no evidence introduced (the Final Applications were unverified and were not supported by declarations or affidavits), no discovery, and no opportunity to investigate claims or develop them for presentation to the court. Baron was given 8 days (later extended to accommodate mediation) to submit his pleadings after the applications that resulted in the 2013

Fee Order were filed.   (Dkt. 1220).   Only seven days were afforded to file

pleadings in response to the applications that resulted in the 2015 Fee Order.  (Dkt.

1369).  Such proceedings cannot form the basis of a preclusion defense.  *A.J. Taft*

*Coal Co. v. Connors*, 829 F.2d 1577, 1581 (11th Cir. 1987) (declining to apply

collateral estoppel where the issue was not fully litigated, which resulted in the

prior court tendering a conclusion "without thoroughly examining" the issue);

*Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances* 723

F.2d 357, 361 (3d Cir. 1983) (issue "not fully litigated" for preclusion purposes

when court did not allow adequate discovery).

Consider further that a seizure of all of Baron's assets had been in place for

nearly 2½ years as a result of the wrongful receivership and the involuntary

bankruptcy. Baron was not only forced to defend against the Fee Applications on

an incredibly accelerated basis imposed by the District Court, but also was

simultaneously forced to defend himself in a complex involuntary bankruptcy trial

that was set to be heard in the middle of May 2013, against another team of highly

skilled lawyers— all this while Baron was deprived of the use of any of his funds

to hire counsel. (Dkts 1220, 1231, 1240, 1279, 1245, 1298 at p. 8, 9, 1231, 1236).[4]

The issues were extraordinarily complex, and the documents and evidence were

voluminous. The Receiver, the Ondova Trustee and their counsel presented over

---

[4] The account that follows herein is taken from these docket numbers.

16,000 pages of Fee Applications, in excess of $5 million in billings, incorporating substantial hours of time and a myriad of time entries. To defend against the Fee Applications on the accelerated time schedule set by the District Court required a team of experienced lawyers familiar with the issues along with testifying experts.

In sharp contrast to Baron's complete deprivation of funds to defend himself and the utter hardship in which he found himself, Baron's well-financed adversaries were represented by over 20 highly paid lawyers with large and prestigious law firms, and accounting firms engaged by the Receiver, who had already been paid over $4 million prosecuting the receivership against him, and were now continuing to be fueled with Baron's money, aggressively prosecuting their Fee Applications against him and his estate. Baron made several pleas to the district court for access to his funds required to defend himself at the trial—all were refused. Likewise, Baron's counsel pleaded with the court that Baron was being denied due process because counsel was deprived of the essential tools required to defend against the fee applications, namely, time and resources to prepare, discovery and access to an expert. Baron was left with unpaid counsel, no discovery, and no experts, in both this trial and the involuntary bankruptcy trial. These proceedings simply cannot form the basis of an issue preclusion defense. *Ids.*

Furthermore, there are immense differences in the quality and extensiveness of the procedures to be followed in the current case when compared to the truncated summary proceedings that produced the Fee Orders. *Copeland, et al. v. Merrill Lynch & Co., et al.*, 47 F.3d 1415, 1422-23 (5th Cir. 1995) (preclusion only applies when "facts and the legal standards used to assess them are the same in both proceedings," and takes into account whether a new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in each proceeding). As noted above, to the extent the district court issued findings of any kind, it did so after only the most summary and truncated process imaginable. In the current proceeding, however, Appellants will be entitled to the full spectrum of tools available for full and robust litigation of contested factual issues, including the ability to employ counsel, conduct discovery, engage in significant motions practice, and ultimately conduct a full blown trial with presentation of evidence, cross examination of witnesses, etc.

Furthermore, in the receivership compensation context, courts merely draw conclusions about performance (using no particular evidentiary standards) to be weighed with numerous other factors in deciding compensation issues in the exercise of their discretion. *SEC v. W.L. Moody & Co., Baners (Unincorporated)*, 374 F. Supp. 465, 480 (S.D. Tex. 1974) ("In general, a reasonable fee is based on all circumstances surrounding the receivership."). There is no independent and

isolated focus on whether, by a preponderance of the evidence, the Receiver committed tortious acts, issues that Appellants here will have the right to have a jury decide. *Byrd v. Blue Ridge Rural Electrical Cooperative* 356 U.S. 525, 537 (1958) ("the nature of the tribunal which tries issues may be important in the enforcement of the parcel of rights making up a cause of action or defense").

### 4.     Statements made by this Court in *Netsphere I* cannot form the basis of a preclusion arugment.

This Court's statements in *Netsphere I* do not change the preclusion analysis. This Court cannot and does not resolve disputed factual issues. *American Standard Credit, Inc. v. National Cement Co.*, 643 F.2d 248, 260 (5th Cir. 1981) ("While this court may draw certain legal conclusions from undisputed facts, we cannot resolve disputed issues of fact at this level."); *United States v. Cisneros*, 491 F.2d 1068 (5th Cir., 1974) ("This court does not sit to resolve factual disputes…"); *see also Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982) ("[Factfinding] is the basic responsibility of district courts, rather than appellate courts...."). Thus, any statements by this Court purporting to make factual findings on disputed topics lack preclusive effect. *Bath Iron Works Corp. v. Coulombe*, 888 F.2d 179, 180 (1st Cir. 1989) ("[D]icta cannot have any collateral estoppel effect because it is not essential to the judgment.").

Moreover, the issues in the instant lawsuit were not and could not have been fully or vigorously litigated before this Court. And this Court's statements in

*Netsphere I* do not alter the quality or characteristics of the other proceedings addressed herein. Furthermore, this Court's decision in *Netsphere I* obviously did not consider any of the issues concerning the receiver's wrongful acts alleged by Plaintiffs to have been committed after the date of the Opinion.

**5.    Appellees' reliance on *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925 is misplaced.**

In support of their collateral estoppel argument, Appellees rely on *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925 (5th Cir. 1999). There, however, the debtor obtained a disgorgement of fees from an accounting firm during the bankruptcy process based on the firm's wrongdoing. Debtor then sought to bring a subsequent malpractice action on the basis of the same facts that led to the disgorgement. *Id.* at 932. On those facts, the court found issue preclusion applicable. *Id.* at 934. Here, there has been no disgorgement or refund of fees by Vogel and no determination of his liability for the wrongdoing alleged. Indeed, Novo Point and Quantec were not even parties to the proceedings so Vogel's liability *vis-a-vis* those entities could not have ever been considered.

Appellees' collateral estoppel defense fails for many reasons. Preclusion principles have absolutely no bearing on any issue in this case.

**V.     Appellees are not entitled to immunity for the claims alleged in the Amended Complaint.**

    **A.     The allegations of the Amended Complaint take this case outside the scope of derived judicial immunity.**

This case is still at the pleadings stage, during which the allegations of the Amended Complaint are presumed true. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Given the extensive and specific factual elaboration on the bad faith conduct of Vogel and his cohorts, and for the reasons elaborated upon more fully in Appellants' initial brief, the Amended Complaint is sufficient to state a plausible claim for relief under currently governing standards of pleading. "Court appointed receivers act as arms of the court and are entitled to share the appointing judge's absolute immunity *provided that the challenged actions are taken in good faith and within the scope of the authority granted to the receiver*." *Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995) (emphasis added). Thus, so long as the Amended Complaint sufficiently alleges that Vogel's challenged actions were not taken in good faith and within the scope of the authority granted to him, immunity is defeated.

The allegations of the Amended Complaint are sufficient to defeat an immunity defense at this stage. Indeed, Appellees do not suggest that the allegations of the Amended Complaint are insufficient to do so. Rather, they argue in effect that collateral estoppel forecloses any plausible claim of bad faith.

Appellees' Brief, pp. 11-12. For the reasons stated above, that just is not so. Collateral estoppel does not and cannot apply to the issues presented by this case.

In fact, perhaps ironically, one of the very Fee Orders Appellees rely on to make their preclusion arguments actually lends credence to Appellants' theory that Vogel was looting and squandering receivership assets by, *inter alia*, churning the file, generating improper billings, and dragging his feet in effectuating the prompt wind up of the receivership ordered by this Court to prolong his ability to loot assets:

> "Once Gardere had established procedures for managing and running the estate and had resolved all the legal matters involved in doing so, however, it should have delegated these activities to less costly professional managers and shifted its focus" (p.29) "Even at the time, and not just in hindsight, the Court was unclear why Gardere did not take a more proactive role in the appellate process and in moving more quickly toward a wind down" (p. 29) … "it simply was not performed with a sense of urgency demanded by the circumstances." (p 30) "Gardere should have delegated many of the tasks its lawyers handled sooner"… (p. 31) … "he [Vogel] also expended some time involved in the minutiae of the litigation which should have been left solely to his counsel. The result was that the estate was essentially billed for two lead litigators. This problem is confounded by the fact that Vogel's billings were often generic and repetitive, making it difficult to determine exactly what work was done when." (p. 37)

(Dkt 1287, 2013 Fee Order).

Presuming the allegations of the Amended Complaint to be true, the *New Alaska* case discussed in Appellants' initial brief is directly on point and holds that the receiver is not entitled to judicial immunity. Appellees' effort to distinguish

the case is unavailing.  The Ninth Circuit there held that a receiver was not entitled to immunity where there was "alleged pilfering from … the parties placed in receivership."    Appellees' Brief, p. 33.    While Appellees have apparently comforted themselves with the puzzling assertion that those circumstances are not presented here, that is *precisely* what the Amended Complaint alleges and precisely what is presumed true at this stage.  Appellants stand by the analysis of *New Alaska* in their initial brief.

The allegations of the Amended Complaint are sufficient to defeat a claim of derived judicial immunity, and issue preclusion (for reasons stated above) has no effect on the viability of an immunity defense.  The Amended Complaint plainly states a plausible claim under *Iqbal* or *Twombly* or any other authorities.

### B.     Attorney immunity does not bar this lawsuit.

Nor are the claims in the Amended Complaint barred by attorney immunity.  In support of the doctrine, Appellees argue only that Vogel was not acting as Baron's attorney, but as Baron's receiver.   But that is a distinction without a difference.  The doctrine only shields attorneys from claims of non-clients.  *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).  Either Vogel was serving Baron in a non-attorney capacity (as Appellees suggest) or Baron was Vogel's client (as Appellants suggest).  Either way, attorney immunity would not apply.  Furthermore, Vogel and Gardere perpetrating a fraud to loot assets from Baron and

entities in which Baron had an interest is "entirely foreign to the duties of an attorney." *Id.* at 482. "[T]he defense does not extend to fraudulent conduct that is outside the scope of an attorney's legal representation of his client... An attorney who pleads the affirmative defense of attorney immunity has the burden to prove that his alleged wrongful conduct … is part of the discharge of his duties to his client." *Id.* at 484. This affirmative defense – raised *sua sponte* by the district court and never pled by Appellees – does not apply here, and it certainly cannot be determined to be applicable on the basis of the pleadings alone. Moreover, affirmative defenses generally should not be raised *sua sponte*. *Warnock v. Pecos County, Tex.*, 116 F.3d 776, 778 (5th Cir. 1997).

## CONCLUSION

The arguments in Appellees' Brief lack merit. Appellees' effort to escape merits-based consideration of the issues by using the waiver rule runs afoul of at least two separate lines of authority. First, despite the fact that the district court's purported alternative rulings constitute a clear abuse of discretion under *Lloyd's Register*, Appellees attempt to wrangle waiver arguments out of those baldly conclusory statements and, in doing so, impose a burden on Appellants that *Lloyd's Register* specifically says Appellants do not have. Second, despite a long line of this Court's cases firmly establishing that the waiver rule simply protects against the prejudice that can result when an appellant raises in a reply a

"completely new issue" that appellee never had an opportunity to address, *Ramirez*, 557 F.3d at 203, Appellees repeatedly attempt to invoke the rule for issues that they briefed at length. There is plainly no surprise and no prejudice with respect to any of the issues in this appeal. Both parties have fully briefed the merits of each issue – even those for which the district court never issued a sufficient ruling. For those reasons, each issue is squarely before this Court for resolution on the merits. As to the merits, Appellees' arguments fail for the reasons stated herein, as well as those stated in Appellants' initial brief. Appellants respectfully request that the Court reverse the Order granting the Motion to Dismiss and remand for further proceedings, and award Appellants their costs.[5]

Respectfully submitted,

/s/ Leonard H. Simon
Leonard H. Simon
Texas Bar No. 18387400
Pendergraft & Simon, L.L.P.
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 528-8555

*Counsel for Appellants*

---

[5] Appellants agree they have abandoned the breach of contract claim. Appellees' Brief, pp. 31-32.

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 27th day of October, 2016, I caused this Reply Brief of Appellants to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

George M. Kryder, III
VINSON & ELKINS, L.L.P.
2001 Ross Avenue, Suite 3700
Trammell Crow Center
Dallas, Texas  75201
(214) 220-7719

*Counsel for Appellees*

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of bound copies of the Reply Brief of Appellants will be filed with the Clerk of the Court via UPS Next Day Air.

/s/ Leonard H. Simon
*Counsel for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*6,978*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[   ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>October 27, 2016</u>            <u>/s/ Leonard H. Simon</u>
                                      *Counsel for Appellants*